1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9             FOR THE EASTERN DISTRICT OF CALIFORNIA

10   HECTOR ALBIZO and MARY ALBIZO,

11           Plaintiffs,                    No. 2:11-cv-02991 KJN

12       v.

13   WACHOVIA MORTGAGE, et al.,

14           Defendants.                    <u>ORDER</u>
     _____/

15

16       In this removed mortgage case[1], currently pending are a motion to dismiss

17   plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), and a request for

18   judicial notice jointly filed by defendant Wachovia Mortgage ("Wachovia") and Wells Fargo

19   Bank, N.A. ("Wells Fargo") (collectively, "defendants").[2]  (Mot. to Dismiss, Dkt. No. 11.)  Also

20   pending are defendants' motion to strike (Mot. to Strike, Dkt. No. 12) and defendants' request

21   for judicial notice ("RJN") (RJN, Dkt. No. 13).

22   _____

23       [1]   This matter proceeds before the undersigned as a result of the parties' voluntary consent
     to the jurisdiction of the undersigned for all proceedings in this case, including trial and entry of final
24   judgment, and an order dated January 9, 2012 (Dkt. No. 26).  <u>See</u> 28 U.S.C. § 636(c)(1); Fed. R. Civ.
     P. 73; E. Dist. Local Rules 301, 305.

25       [2]   Somewhat contradictorily, defendant NDEX West LLC ("NDEX") has "joined" in
26   Wachovia's two pleadings motions *and* simultaneously filed an Answer (Dkt. Nos. 14-15) that same
     day.  Plaintiffs have not objected to NDEX's joinder in the pending motions.

                                    1

Plaintiffs Hector and Mary Albizo ("plaintiffs") filed an opposition to the motion to dismiss (Oppo., Dkt. No. 18) and an opposition to the motion to strike (Dkt. No. 19). Defendants filed a reply memorandum in support of their motion to dismiss (Dkt. No. 21) and a reply memorandum in support of their motion to strike (Dkt. No. 22).

The court heard these matters on its law and motion calendar on April 12, 2012. (Minutes, Dkt. No. 29.)  Attorney Breyon Davis appeared on behalf of plaintiffs.  Attorney Melissa Coyle appeared on behalf of defendants.  The undersigned has considered the briefs, oral arguments, and the appropriate portions of the record in this case and, for the reasons stated below, grants defendants' motion to dismiss in part and denies it in part, and denies defendants' motion to strike.

I.      BACKGROUND

Plaintiffs allege that they were the owners of 7033 Ludlow Drive, Roseville, California 95747 ("the Property"), a single family residence where plaintiffs resided with their family until September 27, 2011.  (Notice of Removal, Dkt. No. 1; Exh. 1 to Notice of Removal ("Complaint"), Compl. ¶ 6.)  Plaintiffs financed the Property in or around August of 2006, utilizing World Savings Bank, FSB, now Wachovia, as their initial lender and loan servicer.  (Id. ¶ 7.)  Plaintiffs were set-up on an automatic payment plan from inception of the mortgage loan. (Id. ¶ 12.)  In July of 2010, plaintiffs were allegedly informed that Wachovia failed to withdraw their monthly payments, and Wachovia allegedly told plaintiffs they were in default and instructed plaintiffs to make a payment of $14,344.35 to bring their account current – which plaintiffs allegedly did.  (Id. ¶¶ 13-15.)  Wachovia allegedly confirmed that plaintiffs' loan was current in a letter dated August 27, 2010.  (Id. ¶ 15.)  Plaintiffs allegedly made subsequent payments in September and October of 2010 as evidenced through their bank statements.  (Id. ¶¶ 16-18.)  Nevertheless, Wachovia allegedly scheduled a November 2, 2010 sale of the Property, and in response, plaintiffs strategically filed a bankruptcy to stop the sale.  (Id. ¶¶ 19-23.)

Plaintiffs allegedly sought to modify their loan and submitted a loan modification

2

1  application to Wachovia.  (Id. ¶¶ 27, 31-34.)  On July 7, 2011 Wachovia allegedly informed

2  plaintiffs that their application was accepted and their new monthly payments would be

3  $2,186.41.  (Id. ¶¶ 33-34.)  Plaintiffs allegedly timely submitted their modified payment.  (Id. ¶

4  34.)  Nonetheless, thereafter Wachovia allegedly sold plaintiffs' property in a non-judicial

5  foreclosure sale on or about July 18, 2011.  (Id. ¶ 40.)

6  II.    LEGAL STANDARD

7          A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6)

8  challenges the sufficiency of the pleadings set forth in the complaint.  Vega v. JPMorgan Chase

9  Bank, N.A., 654 F. Supp. 2d 1104, 1109 (E.D. Cal. 2009).  Under the "notice pleading" standard

10 of the Federal Rules of Civil Procedure, a plaintiff's complaint must provide, in part, a "short and

11 plain statement" of plaintiff's claims showing entitlement to relief.  Fed. R. Civ. P. 8(a)(2); see

12 also Paulsen v. CNF, Inc., 559 F.3d 1061, 1071 (9th Cir. 2009), cert. denied, 130 S. Ct. 1053

13 (2010).  "A complaint may survive a motion to dismiss if, taking all well-pleaded factual

14 allegations as true, it contains 'enough facts to state a claim to relief that is plausible on its

15 face.'"  Coto Settlement v. Eisenberg, 593 F.3d 1031, 1034 (9th Cir. 2010) (quoting Ashcroft v.

16 Iqbal, 129 S. Ct. 1937, 1949 (2009)).  "'A claim has facial plausibility when the plaintiff pleads

17 factual content that allows the court to draw the reasonable inference that the defendant is liable

18 for the misconduct alleged.'"  Caviness v. Horizon Cmty. Learning Ctr., Inc., 590 F.3d 806, 812

19 (9th Cir. 2010) (quoting Iqbal, 129 S. Ct. at 1949).  The court accepts all of the facts alleged in

20 the complaint as true and construes them in the light most favorable to the plaintiff.  Corrie v.

21 Caterpillar, 503 F.3d 974, 977 (9th Cir. 2007).  The court is "not, however, required to accept as

22 true conclusory allegations that are contradicted by documents referred to in the complaint, and

23 [the court does] not necessarily assume the truth of legal conclusions merely because they are

24 cast in the form of factual allegations."  Paulsen, 559 F.3d at 1071 (citations and quotation marks

25 omitted).

26          In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court "may

3

1  generally consider only allegations contained in the pleadings, exhibits attached to the complaint,

2  and matters properly subject to judicial notice." Outdoor Media Group, Inc. v. City of

3  Beaumont, 506 F.3d 895, 899 (9th Cir. 2007) (citation and quotation marks omitted).  Although

4  the court may not consider a memorandum in opposition to a defendant's motion to dismiss to

5  determine the propriety of a Rule 12(b)(6) motion, see Schneider v. Cal. Dep't of Corrections,

6  151 F.3d 1194, 1197 n.1 (9th Cir. 1998), it may consider allegations raised in opposition papers

7  in deciding whether to grant leave to amend, see, e.g., Broam v. Bogan, 320 F.3d 1023, 1026 n.2

8  (9th Cir. 2003) (citing Orion Tire Corp. v. Goodyear Tire & Rubber Co., 268 F.3d 1133, 1137-38

9  (9th Cir. 2001)).

10  III.  MOTION TO DISMISS

11      A.  Defendants Argue That Plaintiffs' Allegations Are "Inconsistent With Judicially
           Noticeable Documents And Plaintiffs' Admissions In The Bankruptcy Action"

12

13          Defendants argue that the contents of plaintiffs' pleading conflicts with the

14  contents of "judicially noticeable documents" and "admissions" made in plaintiffs' bankruptcy

15  action (the "Bankruptcy Action") and unlawful detainer action (the "UD Action"), and that this

16  renders plaintiffs' pleading defective.  (Mot. to Dismiss at 3-4.)  By "judicially noticeable

17  documents,"[3] defendants largely mean documents arising from defendants' own records of

18  plaintiffs' loan payments that were ultimately recorded with the county clerk as part of the

19  foreclosure process, as well as documents arising from the Bankruptcy Action and UD Action.

20          Plaintiffs did not file any objections to defendants' RJN, but plaintiffs challenge

21

22          [3]  In ruling on a motion to dismiss, the court may consider matters which may be judicially
    noticed pursuant to Federal Rule of Evidence 201.  E.g., Isuzu Motors Ltd. v. Consumers Union of
23  U.S., Inc., 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998).  Rule 201 permits a court to take judicial
    notice of an adjudicative fact "not subject to reasonable dispute" because the fact is either: "(1)
24  generally known with the territorial jurisdiction of the trial court or (2) capable of accurate and ready
    determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid.
25  201(b).  The court can also take judicial notice of matters of public record, such as pleadings in
    another action and records and reports of administrative bodies.  Emrich v. Touche Ross & Co., 846
26  F.2d 1190 (9th Cir. 1988).

4

1    the significance of the judicially noticeable documents and argue that, the documents from the

2    UD Action do not serve to bar their claims.  (Oppo. at 4-5.)

3            Pursuant to Federal Rule of Evidence 201, defendants' RJN materials are

4    judicially noticeable and therefore the RJN is granted with respect to the exhibits specifically

5    referenced within this order.  See United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003);

6    Gamboa v. Tr. Corps & Cent. Mortg. Loan Servicing Co., No. 09-0007 SC, 2009 U.S. Dist.

7    LEXIS 19613, at *4-10 (N.D. Cal. Mar. 12, 2009) (unpublished) (court took judicial notice of

8    recorded documents related to the foreclosure sale, including grant deed and deed of trust:

9    "[t]hese documents are also part of the public record and are easily verifiable.")

10           However, in this case in particular, where plaintiffs explicitly allege that

11    defendants failed to properly credit plaintiffs' account for loan payments, and that this allegedly

12    led to foreclosure of plaintiffs' property despite plaintiffs' being current on the loan, defendants

13    have not shown that the judicially noticeable documents serve to bar plaintiffs' claims at the

14    pleading stage.  The fact that defendants successfully recorded documents arising from allegedly-

15    improper record-keeping may bring those recorded documents into a category of judicially

16    noticeable documents not "subject to reasonable dispute," but the documents themselves do not

17    support dismissal of plaintiffs' claims in the ways defendants suggest.  For instance, the recorded

18    Notice of Default is judicially noticeable by virtue of its recordation; however, the undersigned

19    declines to take the documents' contents as true fact in this case, given that the recorder's office

20    does not independently verify the contents of any given document prior to recordation.  Again, in

21    this particular case, where plaintiffs allege that defendants erroneously accounted for plaintiffs'

22    loan payments, recordation of documents based upon those records does not itself prove that

23    plaintiffs were properly credited for loan payments they made such that their case is barred as a

24    matter of law at this procedural posture.  Given the nature of plaintiffs' allegations in this

25    particular case, plaintiffs dispute the accuracy of the documents underlying the recorded

26    documents.  Accordingly, while the recorded documents are accepted as judicially noticeable,

1   defendants have not compellingly shown that such documents support dismissal of plaintiffs'

2   pleading.

3           Further, the statements made in the Bankruptcy Action do not prove that

4   plaintiffs' case fails as a matter of law or that plaintiffs' claims are deficient.  Plaintiffs'

5   statements in the Bankruptcy Action (i.e., that plaintiffs owed certain monies to the bank) do not

6   necessarily preclude plaintiffs' action or claims for relief.  The same is also true with respect to

7   representations plaintiffs made in the UD Action.  (Mot. to Dismiss. at 5-6.)  Defendants are free

8   to use plaintiffs' prior inconsistent statements to impeach plaintiffs.  Defendants are free to use

9   plaintiffs' prior inconsistent statements to frame discovery requests or deposition questions.

10  While the submitted Bankruptcy Action documents and UD Action documents are judicially

11  noticeable (RJN Exhs. K-T and W-Y), defendants have not compellingly shown that such

12  documents support dismissal of plaintiffs' pleading at this procedural posture.

13          Accordingly, while the undersigned grants defendants' unopposed request for

14  judicial notice with respect to the RJN exhibits specifically discussed herein, the undersigned

15  does not find that any of the judicially noticeable documents compellingly support defendants'

16  arguments for dismissal of plaintiffs' pleading.

17      B.      Defendants Argue That Plaintiffs' Claims Are Barred By "Res Judicata"

18          Defendants argue that plaintiffs' claims are barred by "res judicata" in light of the

19  UD Action.  (Mot. to Dismiss at 6-8.)  Defendants' RJN appends documents arising from the UD

20  Action, such as a check-the-box "Answer" form by plaintiffs (Exh. X to RJN) and a check-the-

21  box "Judgment" form in favor of defendants (Exh. Y to RJN).  Apparently, the UD Action did

22  not involve detailed findings of fact and conclusions or law, nor did it involve a lengthy trial with

23  a transcript.  It appears plaintiff Mary Albizo attended trial in the UD Action, but that plaintiff

24  Hector Albizo did not (Exh. Y to RJN), and that plaintiffs proceeded without counsel in that

25  action (Exhs. X &Y to RJN).

26          Defendants' motion fails to distinguish between "issue preclusion" and "claim

6

preclusion," two different forms of "res judicata," and the court declines to guess at which sort of

preclusion theory defendants advance.  For that reason alone, defendants' "res judicata"

argument is denied.

Moreover, the judicially noticeable documents arising from the UD Action

confirm that those proceedings addressed possessory interests in the Property, and the UD court

did not clearly reach issues of other sorts of interests in the property and/or title disputes.

Defendants do not meaningfully discuss any federal authorities supporting their argument that

plaintiffs' unsuccessful affirmative defenses in the UD Action should be construed as failed

claims entitled to preclusive effect in this case.  Defendants do not meaningfully analyze any

federal authorities supporting the argument that summary unlawful detainer proceedings should

be given broad preclusive effect.[4]

Defendants cite Malkoskie v. Option One Mortg Corp., 188 Cal. App. 4th 968,

971–76 (2010), for the proposition that an unlawful detainer judgment in favor of a bank

collaterally estops a homeowner from challenging the validity of the foreclosure sale.  (Mot. to

Dismiss at 6-8.)  However, defendants have not shown that Malkoskie is sufficiently analogous

to the case at bar.

First, in Malkoskie, the plaintiff's subsequent action was based on a challenge to

the validity of the foreclosure sale.  Malkoskie, 188 Cal. App. 4th at 972.  Here, plaintiffs are not

solely challenging the validity of the foreclosure sale; instead, plaintiffs are also challenging

defendants' conduct (i.e., properly accounting for plaintiffs' loan payments, agreeing to a loan

modification, etc.) that occurred before the foreclosure sale.  Plaintiffs allege negligent and/or

fraudulent conduct in keeping track of plaintiffs' loan payments and modification status, and

misleading plaintiffs about whether or when they would foreclose on the property.  (Compl. ¶¶

---

[4] While defendants cite First Pacific Bancorp, Inc. v. Helfer, 224 F.3d 1117, 1128 (9th Cir. 2000), that case did not address the preclusive effects of a summary unlawful detainer action (or unsuccessful affirmative defenses raised in such action) upon a subsequent federal civil suit.

1   13-23, 31-34, 40.)  Second, in <u>Malkoskie</u>, the unlawful detainer action was resolved by stipulated

2   judgment, which the court stated "is usually as conclusive a merger or bar as a judgment rendered

3   after trial."  <u>Malkoskie</u>, 188 Cal. App. 4th at 973.  Here, plaintiffs did not stipulate to the

4   unlawful detainer judgment.  Instead, that judgment was effectuated by way of a short minute

5   order (Exh. Y to RJN), making it unclear precisely what the unlawful detainer court determined.

6   Third, the court in <u>Malkoskie</u> clarified that an unlawful detainer action "is a summary proceeding

7   ordinarily limited to resolution of the question of possession" and that "any judgment arising

8   therefrom is given limited res judicata effect."  <u>Malkoskie</u>, 188 Cal. App. 4th at 973 (citing <u>Vella</u>

9   <u>v. Hudgins</u>, 20 Cal.3d 251, 255 (1977).)  Therefore, defendants have not shown that <u>Malkoskie</u>

10  controls in the instant action.

11          In opposing defendants' argument, plaintiffs cite authorities suggesting that UD

12  proceedings should not be given preclusive effect, especially where there was no trial transcript

13  of the UD proceeding, no findings of fact or conclusions of law in the UD proceeding, and where

14  only a minute order disposes of the UD proceeding.  (Oppo. at 4-5.)  In <u>Vella</u>, for instance, "the

15  record offered in support of the plea of res judicata was virtually barren . . . for no transcript of

16  the municipal court hearing exists, and no findings of fact or conclusions of law were made,

17  other than a notation in the trial judge's minute order to the effect that Vella had not proved her

18  affirmative defenses."  <u>Vella</u>, 20 Cal. 3d 251, 255-58 ("The sparse [unlawful detainer court]

19  record presented to us fails to show either the precise nature of the factual issues litigated, or the

20  depth of the court's inquiry. We decline to assume, given the summary character of this type of

21  action, that the mere pleading of a defense without objection by the adverse party necessarily

22  demonstrates adequate opportunity to litigate the defense.").)  Plaintiffs' argument is well-taken,

23  as the records from the UD Action appear as scant as those in <u>Vella</u>.  <u>See</u> <u>id.</u>

24          Accordingly, defendants have not met their burden of showing that plaintiffs' case

25  should be dismissed on the suggested "res judicata" grounds, and the motion to dismiss is denied

26  with respect to this argument.

C.     Defendants Argue That Plaintiff's "Negligence" Claim Fails For Several Reasons

1.     *Defendants Argue That The "Negligence" Claim Fails Because, In General, Banks Lack A Duty Of Care To Borrowers*

According to defendants, plaintiffs' claims are "based entirely on the right of the bank to collect loan payments and/or to foreclose on the Property furnished as security for the loan.  Indeed, foreclosing on a security interest under a deed of trust and collecting or demanding loan payments are certainly conventional activities of a lender and do not create a duty of care on the part of" defendants.  (Mot. to Dismiss at 9 (citing Nymark v. Heart Fed. Sav. & Loan Ass'n, 231 Cal. App. 3d 1089, 1095 (1991); Sohal v. Federal Home Loan Mortg. Corp., No. C 11-01941 JSW,  2011 U.S. Dist. LEXIS 97355, at *25 (N.D. Cal. Aug. 30, 2011) (unpublished) (dismissing plaintiffs' negligence claim where plaintiffs did "not allege that [defendant banks] acted negligently in connection with the loan modification process" and where plaintiffs alleged only that defendant banks participated in Home Affordable Modification Program ("HAMP"), which was not itself sufficient to allege that the bank had "gone beyond its usual role of a money lender.")

"Under California law, a lender does not owe a borrower or third party any duties beyond those expressed in the loan agreement, except[] those imposed due to special circumstance."  Resolution Trust Corp. v. BVS Dev., 42 F.3d 1206, 1214 (9th Cir. 1994) (citing Nymark, 231 Cal. App. 3d at  1096)).[5]  However, special circumstances triggering a duty may arise when a lender actively participates in a financed enterprise with a borrower.  See Nymark, 231 Cal. App. 3d at 1096; Wagner v. Benson, 101 Cal. App. 3d 27, 35 (1980).

The court in Nymark cautioned that the "general rule" that a lender does not owe a duty of care to a borrower is not absolute.  See e.g., Garcia v. Ocwen Loan Servicing, LLC, No. C 10-0290 PVT, 2010 WL 1881098, at *2 (N.D. Cal. May 10, 2010) (unpublished) (". . . Nymark

---

[5]  In their opposition brief, plaintiffs walk through the Nymark factors and explain their theory of how the complaint's factual allegations support each factor.  (Oppo. at 6-8.)

does not stand for the proposition that a lender never owes a duty of care to a borrower.")  At least one district court has found that a duty of care may arise in connection with "processing [a] loan modification application."  See id. at *3 (finding that a lender owed a duty of care to a borrower-client in processing the borrower's loan modification application).

At least for pleading stage purposes, defendants' discussion of cited authorities does not support the dismissal of plaintiffs' negligence claims.  For instance, defendants' citation to Sohal is not instructive because here, plaintiffs allege negligence in connection with the loan modification process, the foreclosure process, and in defendants' accounting for plaintiffs' loan payments in connection with both processes, not merely that defendants' participation in the HAMP program triggered a duty of care to plaintiffs as in Sohal.  See Sohal, 2011 U.S. Dist. LEXIS 97355 at *24-25.  Defendants' cited cases do not address alleged negligence by a bank in the context of a loan modification, or in the context of improper accounting for loan payments leading to foreclosure of a property where the mortgage payments were allegedly current.  Absent discussion of such authority, the undersigned declines to dismiss plaintiffs' negligence claims at the pleading stage.[6]

2.  *Defendants Argue That Plaintiffs' "Negligence" Claim Fails Because Plaintiffs Failed To Allege Any Damages Resulting From The Alleged Negligence*

Defendants also argue that plaintiffs cannot allege any damages arising from alleged negligence. (Mot. to Dismiss at 9-10.)  However, plaintiffs have pleaded such damages: they allege that negligent accounting for loan payments and lack of adherence to the terms of an agreed-upon modification resulted in actual foreclosure of their home and, therefore, loss of real property.  Defendants' argument that plaintiffs failed to plead facts supporting the "damages"

---

[6] During the hearing, defendants' counsel offered to provide supplemental briefing regarding the issue of "duty" in connection with the loan modification process.  While the undersigned denied the request for supplemental briefing, defendants are free to brief this issue in subsequent filings in this case, such as in a motion to dismiss plaintiffs' amended pleading and/or in a motion for summary judgment.

1    element of their negligence claim is not well-taken.

2        3.    *Defendants Argue That Plaintiffs'"Negligence" Claim Fails Because The Claim*
              *Is Pursuant To Civil Code section 2924 Such That Defendants' Foreclosure*
3             *Filings Were Privileged*

4            Defendants also argue that "plaintiffs fail to pierce the qualified privilege of Civil

5    Code § 47 and 2924(d)" such that plaintiffs' negligence claim is barred.[7]  (Mot. to Dismiss at

6    10.)  Defendants cite to Paragraph 51 of the complaint and state that plaintiffs request damages

7    for defendants' "alleged breach of duty under § 2924."  (Mot. to Dismiss at 10.)

8            On the undersigned's review, Paragraph 51 of the complaint does not make

9    mention of Civil Code § 2924.[8]  (Compl. ¶ 51.)  However, plaintiffs' claim for negligence does

10   explicitly reference Civil Code section 2924, albeit in a conclusory fashion.  (Compl. ¶ 49

11   ("initiating and carrying-out non-judicial foreclosure proceedings according to California Code

12   of Civil Procedure Section 2924 is NOT the conventional rule of a 'mere money lender'" and

13   "[defendants] owed a duty to comply with the rules of Section 2924 in the context of initiating

14   non-judicial foreclosure procedures and not the processing or qualification of a mortgage loan.")

15           Despite defendants' efforts to frame it as such, plaintiffs' negligence claim is not a

16   bare claim "for" violation of California Civil Code section 2924, and plaintiffs' negligence claim

17   is not narrowly premised on defendants' "mailing, publication, and delivery of notices."  Based

18   on the factual allegations in the Complaint, plaintiffs' claim is broader and more like a common

19   law negligence claim.  On the alleged facts particular to this case, the claim arises from

20   defendants' alleged negligence in accounting for plaintiffs' loan payments and with respect to

21   _____

22       [7]  California Civil Code section 2924(d) provides, "All of the following shall constitute
     privileged communications pursuant to Section 47: (a) the mailing, publication, and delivery of
23   notices as required by this section.  (2) Performance of the procedures set forth in this article.  (3)
     Performance of the functions and procedures set forth in this article if those functions and procedures
24   are necessary to carry out the duties described in Sections 729.040, 729.050, and 729.080 of the
     Code of Civil Procedure."

25       [8]  In its entirety, Paragraph 51 reads: "As a direct and proximate result of the negligence and
26   carelessness of WACHOVIA, WFBNA, NDEX and DOES 1-20 as set forth above, Plaintiffs
     suffered general and special damages in an amount in excess of $200,000."

1    plaintiffs' loan modification, both of which allegedly resulted in foreclosure of plaintiffs' home.

2    This alleged negligence is not necessarily synonymous with alleged negligence in the "mailing,

3    publication, and delivery" of notices required to exercise the power of sale in a trust deed or

4    mortgage.  Regardless of whether defendants' foreclosure filings or communications were

5    "privileged" under Civil Code sections 47 and 2924(d), plaintiffs' claims do not solely arise from

6    such filings or communications and therefore defendants' "privilege" argument is not well-taken.

7         D.    Defendants Argue That Plaintiffs' Fraud Claim Fails For Several Reasons

8              To determine if the elements of fraud have been sufficiently pleaded, the court

9    looks to state law.  Kearns v. Ford Motor Co., 567 F.3d 1120, 1126 (9th Cir. 2009).  In

10   California, the elements of fraud are:  (1) misrepresentation; (2) knowledge of falsity (scienter);

11   (3) intent to defraud (i.e., intent to induce reliance); (4) justifiable reliance; and (5) resulting

12   damage.  Id.  Further, fraud must be pleaded with particularity.  Fed. R. Civ. P. 9(b).  Vague or

13   conclusory allegations are insufficient to satisfy Rule 9(b)'s "particularity" requirement.  E.g.,

14   Moore v. Kayport Package Express, Inc., 885 F.2d 531, 540 (9th Cir. 1989).  To comply with

15   Rule 9(b), allegations of fraud must be specific enough to give defendants notice of the particular

16   misconduct that is alleged to constitute the fraud claim so that they can defend against the claim

17   and not just deny that they have done anything wrong.  Bly-Magee v. California, 236 F.3d 1014,

18   1019 (9th Cir. 2001).  Rule 9(b) requires plaintiffs to differentiate between the conduct of each

19   defendant and "inform each defendant separately of the allegations surrounding his alleged

20   participation in the fraud."  Swartz v. KPMG LLP, 476 F.3d 756, 764-65 (9th. Cir. 2007).  In a

21   fraud action against a corporation, a plaintiff must "allege the names of the persons who made

22   the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they

23   said or wrote, and when it was said or written."  Tarmann v. State Farm Mut. Auto Ins. Co., 2

24   Cal. App. 4th 153, 157 (1991).

25   ////

26   ////

12

1      1.      *Defendants Argue That The "Fraud" Claim Fails Due To Lack Of Specificity*
              *Under Federal Rule Of Civil Procedure 9*
2

3              Defendants' argument that plaintiffs' fraud claim lacks specificity is well-taken.

4      (Mot. to Dismiss at 11-12.)  Federal Rule 9 requires plaintiffs to allege specific

5      misrepresentations by specific defendants (i.e., communications from defendants indicating that

6      plaintiffs were current on their mortgage, or the like), by whom and to whom, as well as when

7      and where the misrepresentations occurred, as well as how plaintiffs allegedly relied on the

8      misrepresentations and what damages arose from such reliance.  Plaintiffs' pleading lacks these

9      details.  Accordingly, the motion to dismiss is granted with respect to plaintiffs' fraud claim, but

10     plaintiffs shall have leave to amend to include the above-described factual allegations.

11     2.      *Defendants Argue That Plaintiffs' Fraud Claim Impermissibly Duplicates*
              *Plaintiff's Contract Claim*
12

13             Plaintiffs fail to address defendants' argument that plaintiffs' fraud claim

14     impermissibly duplicates plaintiffs' contract claim.  However, defendants fail to cite to any

15     federal cases regarding fraud claims masquerading as contract claims (or vice versa) warranting

16     dismissal of one claim or the other at the pleading stage in federal court.  If defendants intend to

17     raise this argument in the future, defendants' briefing should include such authorities.  In any

18     event, plaintiffs shall amend their fraud claim as stated above, but should also be prepared to

19     address defendants' argument in future briefing, and should abandon one claim or the other if

20     plaintiffs' counsel determines that both cannot be brought in good faith.

21
       E.      Defendants Argue That A "Presumption" Of Validity Attached To The Trustee's
22             Sale, Thereby Barring Plaintiffs' Claim To Set Aside The Trustee's Sale

23             Plaintiffs allege that they never received a Notice of Default (Compl. ¶ 41) or a

24     Notice of Trustee's Sale (Compl. ¶ 42).  Plaintiffs allege that the Trustee's Sale was necessarily

25     void because defendants never sent them a Notice of Default pursuant to Civil Code § 2924.

26     (Mot. to Dismiss at 14 (citing Compl. at 59-60).)

1    Defendants argue that a recorded trustee's deed "that states compliance with all

2    statutory requirements" triggers a "presumption" of a valid trustee's sale and is "prima facie

3    evidence" that the sale complied with the statutory requirements of Civil Code § 2924. (Mot. to

4    Dismiss at 14.) Defendants reference the recorded Trustee's Deed Upon Sale, which is Exhibit V

5    to defendant's RJN. Defendants argue that "recorded notice of default and notice of sale" trump

6    plaintiffs' "denials of service of foreclosure notices." (Mot. to Dismiss at 14-15 (citing Odinma

7    v. Aurora Loan Servs., No. C-09-4674 EDL, 2010 U.S. Dist. LEXIS 54190, at *18-20 (N.D. Cal.

8    June 3, 2010) (unpublished); Civ. Code § 2924b(2) ("In the absence of fraud, the affidavit

9    required by this subdivision shall establish a conclusive presumption of mailing").)

10    Defendants do not cite to any analogous federal authority discussing grounds for

11    applying a "presumption" to dismiss claims at the pleading stage. While defendants cite to

12    Odinma, where a district court dismissed claims "relating to the propriety of the foreclosure

13    process" in light of the presumption, that case failed to analyze why an evidentiary presumption

14    should properly apply to bar claims at the pleading stage. (Mot. to Dismiss at 14-15 (citing

15    Odinma, 2010 U.S. Dist. LEXIS 54190 at *18-20).) In Odinma, the court found that

16    "[p]laintiffs' allegations of lack of notice" of the foreclosure and trustee's sale "are belied by the

17    contents of the judicially noticed documents," namely, the recorded notice of default, the notice

18    of trustee's sale, and the trustee's deed upon sale. Id. The court found that these recorded

19    documents contained the requisite recitals suggesting that default and sale notices had indeed

20    been given to plaintiffs, such that the "presumption" of validity was triggered. Id. The court

21    found that, in light of the judicially noticed documents, "[p]laintiffs' allegations of lack of notice

22    fail to meet the plausibility standard from Iqbal. The judicially noticed documents demonstrate

23    notice to [p]laintiffs, so amendment of the complaint on this issue would be futile." Id.

24    The undersigned declines to apply Odinma in the manner defendants urge. The

25    Odinma case is non-binding and fails to describe precisely how Iqbal's plausibility standard —

26    applicable at the pleading stage — relates to the evidentiary "presumption" discussed in that

14

1    case.  Tellingly, the court in <u>Odinma</u> cited to state law authorities regarding the presumption, yet

2    those authorities referred to a plaintiff's need to produce "substantial evidence" to rebut the

3    presumption and "prove" an irregularity in the foreclosure process to overcome the presumption.

4    <u>Id.</u> at 17 (quoting state cases).  Without more, the undersigned declines to apply such a

5    "presumption" to bar claims *at the pleading stage*, especially where the <u>Odinma</u> court failed to

6    explain how a plaintiff might *ever* properly overcome such "presumption" at this procedural

7    posture given that plaintiffs are not typically required to produce evidence in pleading their cases.

8    In any event, the question of the impact of such presumption, if it does apply in this case, is more

9    appropriately analyzed as part of summary judgment briefing where it is proper to weigh

10   evidence.  Without more, the undersigned declines to require plaintiffs to "prove" an irregularity

11   or to rebut the presumption with "substantial evidence" at this procedural posture simply because

12   defendants point to judicially noticed documents containing boilerplate language stating that

13   plaintiffs were served with the proper foreclosure notices.[9]  Accordingly, while defendants'

14   "presumption" argument might be compelling as part of a motion for summary judgment, is not

15   well-taken at this procedural posture.

16        F.    <u>Defendants Argue That Plaintiffs Failed To Allege A Valid "Tender"</u>

17        Defendants argue that a foreclosure sale cannot be set aside without the debtor

18   having made "a valid and viable tender of the full indebtedness," and that "[a] complaint that

19   does not allege a tender does not state a cause of action."  (Mot. to Dismiss at 15 (citing cases).)

20        While plaintiffs' pleading may not use the word "tender," it does allege that

21   plaintiffs were current on their mortgage payments at the time their home was sold at a trustee's

22   sale.  (<u>See</u> Oppo. at 11; Compl. ¶ 9 ("Plaintiffs made each payment due on their new loan"); ¶ 18

23   (in October 2010, prior to learning the property was to be sold at an auction on October 30, 2010,

24

25        [9]  Further, here, plaintiffs have alleged fraud.  While the fraud claim is dismissed herein with
      leave to amend, the potentiality of a sufficiently-pleaded fraud claim undercuts defendants' quotation
      of Civil Code § 2924b(2) ("*In the absence of fraud*, the affidavit required by this subdivision shall

26   establish a conclusive presumption of mailing" (emphasis added)).

"[p]laintiffs were current on their monthly payments"); and ¶ 20 ("Plaintiffs were panicked and

confused as all payments had been made, they were not in default on the mortgage loan, they had

not received any notices regarding a sale of the Subject Property, nor should they have received

any notices being they were current on their loan payments").) The undersigned notes that

plaintiffs argue that alleging "tender" is not required where a trustee's sale is void rather than

voidable, but plaintiffs fail to cite to any cases supporting the argument.[10] (Oppo. at 10-11.) In

any event, defendants bear the burden as the moving parties at this procedural posture, and

defendants have not shown that the buzz word "tender" must be used in a pleading in order to

avoid dismissal or that dismissal is otherwise appropriate under these circumstances.

      G.    <u>Defendants Argue That Plaintiffs' Claim For Cancellation Of The Trustee's Deed Upon Sale Is A Remedy, Not A Claim For Relief</u>

      Defendants argue that plaintiffs' claim to "void or cancel" the Trustee's Deed

Upon Sale is actually a remedy, not a claim for relief. (Mot. to Dismiss at 16.) Defendants'

argument is well-taken. "A request to cancel a trustee's deed is a request for a remedy as

opposed to an independent cause of action." <u>Qureshi v. Countrywide Home Loans, Inc.</u>, No. C

09-4198 SBA, 2010 U.S. Dist. LEXIS 21843, 2010 WL 841669, at *7 (N.D. Cal. Mar. 10, 2010)

(unpublished); <u>Bridgeman v. United States</u>, No. 2:10-cv-01457 JAM KJN PS, 2011 U.S. Dist.

LEXIS 6059, at *61-62 (E.D. Cal. Jan. 21, 2011) (unpublished).[11] Further, plaintiffs failed to

---

    [10] The undersigned notes that while plaintiffs quote a real estate practice guide and a case describing circumstances where a deed is "not merely voidable, but void," plaintiffs fail to meaningfully discuss any legal precedent for the proposition that a *void* trustee's sale does not require the pleading of "tender." (Oppo. at 10-11, n.44.)

    [11] District courts have concluded that cancellation of an instrument such as a deed is an equitable remedy and not an independent basis for liability. <u>See, e.g.</u>, <u>Gwin v. Pac. Coast Fin. Servs.</u>, No. 09cv2734 BTM (BLM), 2010 U.S. Dist. LEXIS 40035, 2010 WL 1691567, at *4 (S.D. Cal. Apr. 23, 2010) (unpublished) ("Cancellation is an equitable remedy."); <u>Yazdanpanah v. Sacramento Valley Mortg. Group</u>, No. C 09-02024 SBA, 2009 U.S. Dist. LEXIS 111557, 2009 WL 4573381, at *6 (N.D. Cal. Dec. 1, 2009) (unpublished) ("A request to cancel the trustee's deed is 'dependent upon a substantive basis for liability, [and it has] no separate viability.'") (modification in original) (quoting <u>Glue-Fold, Inc. v. Slautterback Corp.</u>, 82 Cal. App. 4th 1018, 1023 n.3 (2000)).

1    address this argument within their opposition.

2           Accordingly, plaintiff's fourth claim to "void or cancel" the trustee's deed upon

3    sale is dismissed with prejudice.  However, plaintiffs are free to include the cancellation of the

4    trustee's deed as a requested remedy in their Prayer for Relief.

5           H.    <u>Defendants Argue That Plaintiffs' Claim For Breach Of Contract Fails</u>

6           1.    *Defendants Argue That Plaintiffs Cannot Plead Their Own Performance And*

7                 *Cannot Plead Resulting Damages*

8           Plaintiffs alleging breach of contract must plead facts sufficient to establish the

9    following elements: (1) the existence of a contract; (2) the plaintiff's performance or excuse for

10   nonperformance of the contract; (3) the defendant's breach of the contract; and (4) resulting

11   damages.  <u>Krouse v. BAC Home Loans Servicing, LP</u>, No. 2:10-cv-03309-MCE-EFB,

12   2011 U.S. Dist. LEXIS 61823, at *7 (E.D. Cal. June 9, 2011) (unpublished) (citing <u>Armstrong</u>

13   <u>Petrol. Corp. v. Tri Valley Oil & Gas Co.</u>, 116 Cal. App. 4th 1375, 1391 n.6 (2004)).

14            Defendants argue that plaintiffs cannot plead their own performance of the

15   alleged agreements, and that plaintiffs cannot plead resulting damages.  (Mot. to Dismiss at 17

16   (arguing that plaintiffs' having "stopped making electronic payments" in favor of "sending

17   monthly checks" amounts to plaintiffs' nonperformance, and arguing that because the Property

18   was sold prior to plaintiffs' loan payment on July 29, 2011, there was "no loan to apply payment

19   towards" and therefore that plaintiffs suffered no damages.)

20           Defendants' arguments are not well taken.  As plaintiffs explain, plaintiffs have

21   alleged their own performance "according to the terms of the contract when sending [their]

22   payment for $2,186.41 dated July 8, 2011 which WACHOVIA/WELLS cashed on July 11, 2011

23   – [s]even days before foreclosing on the Subject Property . . . [p]laintiffs suffered damages when

24   losing their home, having to relocate and trying to repair their credit from the effects of a

25   ////

26   ////

17

1   foreclosure."[12]  (Oppo. At 12.)  Accordingly, defendants have not shown that plaintiffs failed to

2   plead the "performance" and "damages" elements of a contract claim.

3       2.       *Defendants Argue That Plaintiffs' Claim For Breach Of Contract Fails Because
                 Plaintiffs Did Not "Attach" The Contracts To Their Pleading*

4

5       Defendants cite to two California cases to support the argument that plaintiffs

6   alleging breach of contract must "attach" the contract(s) to their pleading and/or plead the "terms

7   and conditions" of the contract.  (Mot. to Dismiss. at 16-17.)  However, defendants do not cite to

8   any federal authorities supporting this argument.  In any event, while plaintiffs dispute the

9   suggestion that they must "attach" contracts to their pleading, plaintiffs nonetheless attach three

10  exhibits to their opposition and suggest that these documents represent the "terms" of the

11  modification agreement alleged.  (Oppo. at 12; Exhs. 1-3 to Oppo.)

12      During the hearing, counsel for plaintiffs confirmed that plaintiffs intend their

13  contract claim to arise from an alleged "modification agreement," that such agreement arises at

14  least in part from Exhibits 1 through 3 of plaintiffs' opposition brief, and that the agreement's

15  terms and conditions are alleged in Paragraphs 33-37 of the complaint and Section F of plaintiffs'

16  opposition brief.  However, Paragraphs 65-67 of the complaint allege that plaintiffs' "original

17  loan agreement" was also breached.  (Compl. ¶¶ 65-67.)  Accordingly, to improve the clarity of

18  plaintiffs' contract claim and to insure the allegations supporting that claim are all properly

19  contained within plaintiffs' pleading, plaintiffs shall also amend their pleading to include

20  Exhibits 1 through 3 of plaintiffs' opposition brief, along with further clarifying allegations

21  regarding the alleged modification agreement and its alleged terms and conditions.  Plaintiffs'

22  amended breach of contract claim shall also expressly clarify which contract(s) form the basis for

23

24      [12]  See also Compl.  ¶ 20 ("Plaintiffs were panicked and confused as all payments had been
        made, they were not in default on the mortgage loan, they had not received any notices regarding a
25      sale of the Subject Property, nor should they have received any notices being they were current on
        their loan payments"); ¶¶ 69-70 (defendants "foreclos[ed] on a mortgage and deed of trust that was
26      current", and "Plaintiffs have suffered compensatory damages in an amount [in] excess of $200,000).

the claim: the alleged "modification agreement," the loan agreement, and/or some other

agreement.

3.    *Defendants Argue That Plaintiffs' Claim For Breach Of Contract Fails Because Plaintiffs "Cannot State Their Own Compliance Under The Contracts"*

As to plaintiffs' allegation that Wells Fargo breached loan agreements by failing

to electronically debit plaintiffs' loan payments (Compl. ¶ 67), defendants argue that no contract

required Wells Fargo to "accept" electronic debiting, and in any event, if such agreement existed,

that plaintiffs themselves admit to violating it insofar as they allege that they "instead began

sending monthly checks" instead of using electronic debiting.  (Mot. to Dismiss at 17-18

(quoting Compl. ¶ 15).)  Defendants also argue that they cannot be liable for breaching any

agreements regarding the foreclosure of the Property, given that plaintiffs' complaint reveals

plaintiffs' "own breach" of such agreement.  (Id. at 17-18.)

Defendants' arguments boil down to an assertion of an affirmative defense akin to

unclean hands.  Defendants argue that they cannot, as a matter of law, be liable for breaching a

contract if plaintiffs' pleading suggests that plaintiffs may have also breached the alleged

contract.  Defendants do not cite to a single case in support of this argument.  Defendants have

not compellingly shown that dismissal of the contract claims at the pleading stage is appropriate

under these circumstances.

I.    Defendants Argue That Plaintiffs' Claim For Violation Of The Implied Covenant Of Good Faith And Fair Dealing Fails Because Plaintiffs "Cannot Plead Their Own Compliance" With The Implied Covenant

Plaintiffs'  implied covenant of good faith and fair dealing ("GFFD") claim alleges, in

part, that:

> Defendants breached the covenant of good faith and fair
> dealing as it applied to their modification agreement.
> Defendants' compliance with the terms of the modification as
> described in WACHOVIA's July 29, 2011 letter to Plaintiffs
> was and remains a benefit to which Plaintiffs are entitled as
> binding contractual agreement.  However, in failing and

19

1   refusing to comply in good faith, Defendants breached the
2   implied covenant of good faith and fair dealing by the
    following: (1) failing to provide the promised loan
3   modification after Plaintiffs had completed the performance
    required of them under the agreement – paying $2,184.41
4   beginning August 1, 2011 and (2) failing to comply with
    Civil Code Section 2924 when foreclosing on the Subject
5   Property pursuant to a fraudulent Notice of Default never
    noticed and by (3) failing to comply with the terms of
6   Plaintiffs' Promissory Note and Deed of Trust when
    unilaterally refusing to continue automatic debiting of
7   Plaintiffs' monthly mortgage payments which resulted in
    excess fees . . .

8   (Compl. ¶ 74.)

9           As a preliminary matter, defendants correctly note that plaintiffs' GFFD claim

10  (Compl. at 12) appears to be erroneously alleged against "ONEWEST," an entity that is not a

11  party to this action.  (Mot. to Dismiss at 18.)  Accordingly, plaintiffs shall amend the claim so

12  that it names a defendant or defendants in this action.

13          Commendably, defendants proceed as if plaintiffs had alleged the GFFD claim as

14  against Wells Fargo.  (Mot. to Dismiss at 18.)  Defendants argue that "this claim is not

15  actionable."  (Id. (citing Carma Developers Inc. v. Marathon Dev. Calif., Inc., 2 Cal. 4th 342, 374

16  (1992) ("[N]o reported case . . . has held [that] the covenant of good faith may be read to prohibit

17  a party from doing that which is expressly permitted by an agreement.  To the contrary, implied

18  terms should never be read to vary express terms.").)   However, defendants cite to only one

19  federal case wherein a court dismissed a GFFD claim at the pleading stage in a mortgage case.

20  (Mot. to Dismiss at 19 (citing Dooms v. Fed. Home Loan Mortg. Corp., 2011 U.S. Dist. LEXIS

21  38550, at *23-34 (E.D. Cal. March 31, 2011) (unpublished) ("[T]he deed of trust entitled the

22  moving defendants to pursue foreclosure and thus no implied covenant prohibited them from

23  doing that which they were entitled to do.  The implied covenant claim fails.").)[13]

24  

---

25          [13]  Defendants also cite to federal authority for the proposition that there is no legal
    requirement that a lender agree to modify a mortgage, (Mot. to Dismiss at 19 (citing Paek v. Plaza
26  Home Mortg., Inc., No. CV 09-1729 CAS (Ctx), 2009 U.S. Dist. LEXIS 54888, at *8 (C.D. Cal.

1        However, the court in <u>Dooms</u> dismissed the GFFD claim in that case not simply

2   because the deed of trust gave the defendant bank the power to foreclose, but because the

3   complaint in that case also failed to allege any "tangible contract claim" or any "specific

4   contractual obligation on which to premise a breach of an implied covenant claim."  <u>Dooms</u>,

5   2011 U.S. Dist. LEXIS 38550 at *23.  Here, plaintiffs have alleged the existence of various

6   contracts: a modification agreement, as well as a promissory note and deed of trust.  (Compl. ¶

7   74.)  It cannot be said that plaintiffs' GFFD claim is not based on any" tangible contract claim."

8   <u>See Dooms</u>, 2011 U.S. Dist. LEXIS 38550 at *23.  Moreover, as pleaded, plaintiffs' GFFD claim

9   is not narrowly premised upon defendants' foreclosure of the property, but is also premised upon

10  defendants' allegedly failing to give effect to an alleged agreement to modify plaintiffs' loan and

11  on allegedly failing to give effect to plaintiffs' electronic debit payments.  (Compl. ¶ 74.)

12  Defendants have not shown that dismissal of plaintiffs' GFFD claim is appropriate at this

13  procedural posture.

14        J.      <u>Defendants Argue That Plaintiffs' Claim For Unjust Enrichment Fails Because
                  There Is No Cause Of Action For "Unjust Enrichment"</u>

15

16        There is a split of authority in regards to whether a claim for unjust enrichment is

17  a separate, stand-alone claim or simply a remedy.  <u>See</u> <u>Davenport v. Litton Loan Servicing, L.P.</u>,

18  725 F. Supp. 2d 862, 885 (N.D. Cal. 2010) ("Courts in this state and district diverge on whether

19  unjust enrichment functions as an independent claim or is instead an effect that must be tethered

20  to a distinct legal theory to warrant relief.  Some courts have read a plaintiff's 'claim' for unjust

21  enrichment as a claim for relief.").  As summarized in <u>Davenport</u>:

22

23              Under both views, the effect of unjust enrichment is
                remedied with some form of restitution.  A plaintiff
                advances a basis for obtaining restitution if he or she

24

_____

25  June 15, 2009) (unpublished))), but this proposition does not itself support defendants' contention
    that a GFFD claim fails at the pleading stage as long as an agreement authorizes a defendant to
26  pursue foreclosure.

1  demonstrates defendant's receipt and unjust retention of
   a benefit.  The fact that one person benefits another is
2  not, by itself, sufficient to require restitution.  Instead,
   [the] person receiving the benefit is required to make
3  restitution only if the circumstances are such that, as
   between the two individuals, it is unjust for the person to
4  retain it.

5  Id. (citations and quotation marks omitted).

6          Here, even assuming that any of the defendants were unjustly enriched, plaintiffs'

7  unjust enrichment claim is unintelligible.  Plaintiffs' "unjust enrichment" claim totals three short

8  paragraphs without any supporting factual allegations included beneath the heading for the claim.

9  (Compl. ¶¶ 78-80.)  It is not clear what acts plaintiffs allege gave rise to the alleged unjust

10 enrichment.  It is not clear what form(s) of "restitution" plaintiffs seek in relation to this claim.

11 (Id. ¶ 80.)

12         In any event, while California courts disagree as to whether unjust enrichment

13 may be brought as a separate cause of action or instead merely provides a remedy for another

14 claim courts in this district have adopted the latter view.  See Foster Poultry Farms v.

15 Alkar-Rapidpak-MP, No. 1:11–CV–00030 AWI SMS, 2011 WL 2414567, at *6 (E.D. Cal. June

16 8, 2011) (unpublished) ("[U]njust enrichment is not an independent cause of action because it is

17 duplicative of relief already available under various legal doctrines.  This conclusion is in

18 accordance with prior Eastern District of California cases and cases from other federal district

19 courts in California.") (citing 3W S.A.M. Tout Bois v. Rocklin Forest Prods., Inc., No.

20 2:10-cv-01070-MCE-KJN, 2011 WL 489735, at *5 (E.D. Cal. Feb. 7, 2011) (unpublished)

21 ("[U]njust enrichment is not recognized as a cause of action in the Eastern District of

22 California."); Boon Rawd Trading Int'l Co., Ltd. v. Paleewong Trading Co. Inc., No. C 09-05617

23 WHA, 2011 WL 846639, at *8 (N.D. Cal. Mar. 8, 2011) (unpublished); Mattel, Inc. v. MGA

24 Entm't, Inc., 782 F. Supp. 2d 911, 1014 (C.D. Cal. Jan. 5, 2011) ("This Court is convinced by the

25 view that stand alone claims for unjust enrichment are simply redundant of relief already

26 available under other existing law, and that such claims have the potential to cause needless

confusion to the fact-finder and the Court.").

As plaintiffs themselves acknowledge, their unjust enrichment claim "claim" may be better framed as a "remedy." (Oppo. at 14.) Accordingly, plaintiffs' claim for unjust enrichment is dismissed with prejudice. Plaintiffs are free to include a request for damages arising from unjust enrichment within the Prayer for Relief in their amended pleading.[14]

K. **Defendants Argue That Plaintiffs' Claim For Violation Of Business & Professions Code §§ 17200 Et Seq. Fails**

Plaintiffs have alleged the violation of the Unfair Competition Law ("UCL"), California Business and Professions Code §§ 17200 et seq. (Compl. at 14-16.)

California's UCL permits recovery for "'any unlawful, unfair or fraudulent business act or practice.'" Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co., 20 Cal. 4th 163, 180, 973 P.2d 527, 539 (1999) (quoting Cal. Bus. & Prof. Code §§ 17200); see also Wang v. Chinese Daily News, Inc., 623 F.3d 743, 758 (9th Cir. 2010). "Each of these three prongs constitutes a separate and independent cause of action." Martinez v. Wells Fargo Home Mortg., Inc., 598 F.3d 549, 554 (9th Cir. 2010) (citing Cel-Tech Commc'ns, Inc., 20 Cal. 4th at 180, 973 P.2d at 539-40). "An action based on this statute 'borrows' violations of other laws and treats these violations, when committed pursuant to business activity, as unlawful practices independently actionable under section 17200.'" Wang, 623 F.3d at 758-59 (quoting Farmers Ins. Exch. v. Super. Ct., 2 Cal. 4th 377, 383, 826 P.2d 730 (1992)). Defendants argue that plaintiffs' UCL claim fails to meet the "unlawful" prong and should therefore be dismissed. (Mot. to Dismiss at 20.)

---

[14] See MB Tech., Inc. v. Oracle Corp., No. C 09-5988 RS, 2010 WL 1576686, at *4 (N.D. Cal. April 19, 2010) (unpublished) ("[U]njust enrichment represents a form of relief rather than an independent claim. To plead . . . unjust enrichment, a plaintiff must allege a receipt of a benefit and unjust retention of it at the expense of another. [Citation.] A dismissal of the [unjust enrichment] 'claim' will not, in fact, preclude [plaintiff]'s ability to recover on a theory of unjust enrichment, because [plaintiff] could potentially show the existence of these elements in connection with several of its other claims, such as . . . fraud.") (internal citations omitted).

23

Defendants are correct that the sufficiency of plaintiffs' UCL claim depends in part upon plaintiffs' other claims, because a UCL violation must be premised on some other wrong.  In this case, the "wrong" upon which plaintiffs' UCL claim is premised appears to be defendants' alleged fraud in connection with the loan modification process and in connection with the processing of plaintiffs' loan payments.[15]  (Compl. ¶ 84 (alleging "deceptive business practices with respect to mortgage loan servicing, compliance with the terms of notes and deeds of trust, compliance with loan modification contracts and the foreclosure of residential properties and related matters" by, among other things, "[i]mproperly characterizing [p]laintiffs' accounts as being in default or delinquent status to generate unwarranted fees" and "[m]isapplying or failing to apply [p]laintiffs' payments," and "[e]xecuting and recording false and misleading documents to facilitate foreclosure.")

As pleaded, plaintiffs' UCL claim is largely entwined with their fraud claim and both appear to arise from the same facts; namely, that plaintiffs was promised a loan modification that they never actually received, and that plaintiffs made loan payments that were never properly credited to their account.  Where a complaint sounds in fraud, all of its allegations are subject to Rule 9(b)'s pleading requirements, and consequently, UCL claims must be dismissed if they are based on allegations of fraud but not pleaded with particularity.  Kearns, 567 F.3d at 1124-25;  Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1103-04 (9th Cir. 2003).  For the same reasons described above in the discussion of plaintiffs' fraud claim, plaintiffs' UCL claim is not pleaded with the requisite particularity.  Accordingly, the undersigned grants defendants' motion to dismiss with respect to the UCL claim, but plaintiff shall have leave to

---

[15]  While the complaint specifically references the UCL's "unlawful" prong (Compl. ¶ 82), the complaint also frames the UCL claim as arising from "deceptive business practices" and the allegations underlying the UCL claim also sound in fraud.  (Compl. ¶ 84.)  In their opposition, plaintiffs clarify that they intend their UCL claim to arise from "unlawful or unfair" business practices, and specifically intend the claim to arise from "deceptive business practices."  (Oppo. at 15.)

1   amend the claim to correct the deficiencies described above.[16]  Because this order dismisses

2   plaintiffs' fraud claim but gives plaintiffs leave to amend it, such amendment will necessarily

3   affect the allegations supporting the UCL claim, and it would be premature to dismiss the UCL

4   claim with prejudice at this time.

5          Defendants also argue that plaintiffs "lack standing under the UCL."  (Mot. to

6   Dismiss at 21 (arguing that plaintiffs must allege that they "suffered injury in fact and have lost

7   money or property as a result of the unfair competition") (citing Bus. & Prof. Code § 17204).)

8          While plaintiffs have alleged a loss in money and property — namely, their home

9   — as a result of defendants' allegedly deceptive business practices, plaintiffs failed to address

10  this argument in their opposition.  Because plaintiffs' UCL claim is dismissed with leave to

11  amend, plaintiffs should carefully review defendants' "standing" argument, and should amend

12  their pleading so as to clearly describe the damages they allege in connection with their UCL

13  claim.  Plaintiffs shall allege what lost money or property they allegedly suffered as a result of

14  defendants' alleged deceptive business practices.  The damages should be alleged as part of their

15  UCL claim (i.e., beneath the heading for that claim).

16      L.    <u>Defendants Argue That Plaintiffs' State Law Claims Are Preempted Under The
              Homeowner's Loan Act</u>

17

18         Defendants argue that the Home Owners Loan Act ("HOLA") (12 U.S.C. §

19  1463(a), § 1464(a); 12 C.F.R. § 560.2) preempts all of plaintiffs' state law claims.[17]  (Mot. to

20

---

21         [16]  In amending their UCL claim, plaintiffs are cautioned that the claim must be pleaded with
    particularity.  <u>E.g.</u>, <u>Kearns</u>, 567 F.3d at 1125 ("we have specifically ruled that Rule 9(b)'s heightened

22  pleading standards apply to claims for violations of the . . . UCL."); <u>Periguerra v. Meridas Capital,</u>
    <u>Inc.</u>, No. C 09-4748 SBA, 2010 WL 395932, at * 8 (N.D. Cal. Feb. 1, 2010) (unpublished) ("To the

23  extent Plaintiffs are relying on the 'fraudulent' prong of the section 17200, Plaintiffs must allege
    reliance"); <u>Cattie v. Wal-Mart Stores, Inc.</u>, 504 F. Supp. 2d 939, 947-49 (S.D. Cal. 2007); <u>In re</u>

24  <u>Tobacco II Cases</u>, 46 Cal. 4th 298, 328 (2009).

25         [17]  Pursuant to HOLA, the Office of Thrift Supervision ("OTS") was granted the power,
    "under such regulations as [it] may prescribe – to provide for the organization, incorporation,

26  examination, operation, and regulation of . . . Federal savings associations . . . ." 12 U.S.C. §

1   Dismiss at 21-25.)  Defendants spend several pages arguing about the nature and scope of HOLA

2   preemption with respect to plaintiffs' various claims in this case.  (<u>Id.</u>)  However, defendants'

3   argument on the threshold issue of whether Wells Fargo and Wachovia may properly assert

4   HOLA preemption given their status as "successors" of World Savings Bank FBS ("World

5

6   1464(a).  The OTS is thus authorized "to prescribe a nationwide system of operation, supervision, and regulation which would apply to all federal associations." <u>Glendale Fed. Sav. & Loan Ass'n v.</u>

7   <u>Fox</u>, 459 F. Supp. 903, 909 (C.D. Cal. 1978).  The OTS regulations are "preemptive of any state law purporting to address the subject of the operations of a federal savings association." 12 C.F.R. §

8   545.2.  The "OTS hereby occupies the entire field of lending regulation for federal savings associations . . ." and a federal savings association "may extend credit as authorized under federal

9   law, including this part, without regard to state laws purporting to regulate or otherwise affect their credit activities."  12 C.F.R. § 560.2(a).

10         The Ninth Circuit Court of Appeals has "described HOLA and its following agency regulations as . . . so pervasive as to leave no room for state regulatory control. [B]ecause there has

11   been a history of significant federal presence in national banking, the presumption against preemption of state law is inapplicable." <u>Silvas v. E*Trade Mortg. Corp.</u>, 514 F.3d 1001, 1004-1005

12   (9th Cir. 2008).

13         The applicable regulations provide for HOLA preemption of state laws that purport to impose upon a federal savings bank any requirements regarding the "terms of credit, including .

14   . . balance, payments do, or term to maturity of the loan;" "disclosure and advertising," and "processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages."

15   12 C.F.R. § 560.2(b)(4), (b)(9), and (b)(10).

16         However, HOLA's preemption of state laws affecting federal savings associations is not absolute. Section 560.2(c) carves out state laws that "only *incidentally* affect the lending

17   operations of Federal savings associations or are otherwise consistent with the purposes of paragraph (a) of this section." 12 C.F.R. § 560.2(c) (emphasis added).  The Ninth Circuit Court of Appeals has

18   given further guidance with respect to whether a state law of general applicability is preempted by HOLA "as applied":

19

20          [T]he first step will be to determine whether the type of law in question is listed in paragraph (b) [of 12 C.F.R. § 560.2]. If so, the

21          analysis will end there; the law is preempted. If the law is not covered by paragraph (b), the next question is whether the law affects lending.

22          If it does, then, in accordance with paragraph (a), the presumption arises that the law is preempted. This presumption can be reversed

23          only if the law can clearly be shown to fit within the confines of paragraph (c). For these purposes, paragraph (c) is intended to be

24          interpreted narrowly. Any doubt should be resolved in favor of preemption.

25   <u>Silvas</u>, 514 F.3d at 1004-1006 ("Section 560.2(c) provides that state laws of general applicability only incidentally affecting federal savings associations are not preempted."); <u>accord</u> <u>DeLeon v. Wells</u>

26   <u>Fargo Bank, N.A.</u>,729 F. Supp. 2d 1119, 1125 (N.D. Cal. 2010).

1    Savings") amounts to only one footnote containing one sentence.  (Id. at 21 n.5.)

2            According to defendants, World Savings was a federal savings association

3    "organized and operating under HOLA" at the time plaintiffs entered into the loan with World

4    Savings.  (Mot. to Dismiss at 22 (citing various RJN exhibits).)  Later, World Savings "changed

5    its name to Wachovia Mortgage, FSB," and thereafter "changed its name and converted its

6    charter, to Wells Fargo Bank Southwest, N.A. just before merging with Wells Fargo Bank, N.A."

7    (Id. (citing Exhs. C-G to RJN ).)  Without really discussing the legal authorities for the

8    implication, defendants imply that because World Savings could have asserted HOLA

9    preemption, its successor entities (i.e. Wachovia, Wells Fargo Southwest, and Wells Fargo Bank)

10   may now properly assert HOLA preemption.  (Id. at 21 n.5.)  In other words, defendants argue

11   that World Savings' ability to assert HOLA preemption has trickled down to the defendants in

12   this case.  Defendants' one-sentence argument on this point reads, in its entirety:

13                   The application of HOLA applies to successors of federal
                     savings banks.  Guerrero v. Wells Fargo Bank, N.A.,
14                   2010 U.S. Dist. LEXIS 96261 (C.D. Cal. Sept. 14, 2010)
                     ("Where a national association, such as [Wells Fargo
15                   Bank, N.A.], acquires the loan of a federal savings bank,
                     it is proper to apply preemption under HOLA."); DeLeon
16                   v. Wells Fargo Bank, N.A., 2010 U.S. Dist. LEXIS 62499
                     *6 (N.D. Cal. June 9, 2010); Zlotnik v. U.S. Bancorp, et
17                   al., 2009 U.S. Dist. LEXIS 119857 *17-26 (N.D. Cal.
                     Dec. 22, 2009); see also 9 Witkin, Summary of Cal. Law,
18                   Corporations § 198 (10th ed. 2005) (In a merger the
                     surviving entity "succeeds to the rights, property, debts
19                   and liabilities, without other transfer.").

20   (Mot. to Dismiss at 21 n.5.)

21           Defendants have not made the threshold showing that they are in the position to

22   assert HOLA preemption in this case.  As one district court recently stated in analyzing a bank's

23   argument that HOLA preemption "sticks" to the loan as it passes to successor entities, "Wells

24   Fargo has . . . cited several cases stating that Wells Fargo enjoys the HOLA preemption enjoyed

25   by World Savings and Wachovia. But as authority for that proposition, these [cited] cases cite

26   either (a) nothing, (b) each other, or (c) generic statements of law about corporations succeeding

27

1   to the rights of the entities they acquire."  Gerber v. Wells Fargo Bank, N.A., No. CV

2   11-01083-PHX-NVW, 2012 U.S. Dist. LEXIS 15860, at *7-10 (D. Ariz. Feb. 9, 2012)

3   (unpublished) (citing district court cases, including DeLeon v. Wells Fargo Bank, N.A., 729 F.

4   Supp. 2d 1119 (N.D. Cal. 2010) and Guerrero v. Wells Fargo Bank, N.A., No. CV

5   10-5095-VBF(AJWx), 2010 U.S. Dist. LEXIS 96261, at *8 (C.D. Cal. Sept. 14, 2010)

6   (unpublished)); see also Yang v. Home Loan Funding, Inc., No. CV F 07-1454, 2010 WL

7   670958, at *7-10 (E.D. Cal. Feb. 18, 2010) (unpublished) (denying a motion to dismiss in part

8   because defendant had not shown that it was a federal savings association); Falcocchia v. Saxon

9   Mortg., Inc., 709 F. Supp. 2d 873, 886 (E.D. Cal. 2010) (denying motion to dismiss on HOLA

10  preemption grounds because "[t]he OTS regulation at issue in Silvas 'occupies the entire field of

11  lending regulation for federal savings associations.' 12 C.F.R. § 560.2 (emphasis added). Such

12  associations are those chartered under HOLA § 5(o), 12 U.S.C. § 1464(o).  See 12 C.F.R. §§

13  541.2, 541.11.  A defendant must demonstrate that it is such an entity before the defendant may

14  benefit from the preemption defense recognized by Silvas . . . Here, defendants have not offered

15  any argument or evidence as to the threshold question of whether they are federal savings

16  associations.")  In rejecting Wells Fargo's argument, the court in Gerber further explained that

17  "preemption is not some sort of asset that can be bargained, sold, or transferred.  HOLA

18  preemption was created by the OTS for the benefit of federal savings associations . . . Wells

19  Fargo is not a federal savings association, and its cited cases are therefore not persuasive.  HOLA

20  preemption does not apply to Wells Fargo."  Gerber, 2012 U.S. Dist. LEXIS 15860, at *7-10.

21          Given defendants' one-sentence "argument" for why defendants are in the

22  position to assert HOLA preemption, and given that some courts have rejected defendants'

23  argument insofar as it relies solely upon district court authorities that cite to "(a) nothing, (b)

24  each other, or (c) generic statements of law," see id., the undersigned finds that, at least at this

25  procedural posture, defendants have not sufficiently shown that they may assert HOLA

26  preemption in this case.

28

1     IV.     <u>MOTION TO STRIKE</u>

2         Rule 12(f) of the Federal Rules of Civil Procedure states that a court "may strike

3 from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous

4 matter." "Motions to strike are disfavored, and the remedy of striking a pleading should

5 generally be used only when necessary to discourage parties from raising allegations that are

6 completely unrelated to the relevant claims and when the interests of justice so require." <u>Serpa v.</u>

7 <u>SBC Telecomms., Inc</u>., No. C 03-4223 MHP, 2004 WL 2002444, at *3 (N.D. Cal. Sept. 7, 2004)

8 (unpublished) (citing <u>Augustus v. Board of Pub. Instruction</u>, 306 F.2d 862, 868 (5th Cir. 1962));

9 <u>see also</u> <u>Fogerty v. Fantasy, Inc.</u>, 984 F.3d 1524, 1527 (9th Cir. 1993), rev'd on other grounds by

10 <u>Fogerty v. Fantasy, Inc.</u>, 510 U.S. 517 (1994) ("The function of a 12(f) motion to strike is to

11 avoid the expenditure of time and money that must arise from litigating spurious issues by

12 dispensing with those issues prior to trial . . . .")

13         Defendants' motion seeks to strike three paragraphs of plaintiffs' pleading:

14 Paragraph 57, 77, and the fifth paragraph of the Prayer for Relief.[18]  (Mot. to Strike, Dkt. No. 12

15 at 2.)  As grounds for striking these paragraphs, defendants argue that "(i) plaintiffs are not

16 entitled to punitive damages; (ii) plaintiffs fail to plead facts sufficient for an award of punitive

17 damages pursuant to California Civil Code § 3294(a), (b), and (c); and (iii) plaintiffs are not

18 entitled to damages for emotional distress."  (<u>Id.</u>)  Defendants' arguments are not well-taken.

19 _____

20      [18]  Paragraph 57 reads, in its entirety: "As a result of Wachovia, WFBNA and DOE 1-20's fraudulent conduct, Plaintiffs have suffered compensatory, general and special

21 damages in an amount to proof. Additionally, WACHOVIA, WFBNA and DOE 1-20 acted with malice, fraud and/or oppression and, thus, Plaintiffs are entitled to an award of punitive damages as Plaintiffs have already been in excess of $200,000."

22

23 Paragraph 77 reads, its entirety: "As a direct and proximate result of Defendants' breach of the covenant of good faith and fair dealing described herein, Plaintiffs have suffered damage to their

24 consumer credit history and home mortgage creditworthiness with resulting financial loss, emotional distress, pain and suffering and they have suffered additional compensatory damages to an amount in excess of $200,000."

25

26 Paragraph 5 of the Prayer reads, in its entirety: "For compensatory, special, general and punitive damages according to proof against all Defendants currently in excess of $200,000."

1    "Rule 12(f) does not authorize a district court to strike a claim for damages on the

2    ground that such damages are precluded as a matter of law."  Whittlestone, Inc. v. Handi-Craft

3    Co., 618 F.3d 970, 971 (9th Cir. 2010).  The court in Whittlestone noted that courts may not

4    resolve disputed and substantial factual or legal issues in deciding a motion to strike.  Id. at 973.

5    "Motions to strike are generally not granted unless it is clear that the matter to be stricken could

6    have no possible bearing on the subject matter of the litigation."  LeDuc v. Kentucky Cent. Life

7    Ins. Co., 814 F. Supp. 820, 830 (N.D. Cal. 1992).  Granting a motion to strike may be proper if it

8    will make trial less complicated or eliminate serious risks of prejudice to the moving party, delay,

9    or confusion of the issues.  Fantasy, 984 F.2d at 1527-28;  Travelers Cas. and Sur. Co. of

10   America v. Dunmore, No. CIV. S-07-2493 LKK-DAD, 2010 WL 5200940, at *3 (E.D. Cal. Dec.

11   15, 2010) (unpublished) (same).  As the moving party, defendant bears the burden on its motion

12   to strike and the standard for granting such a motion is high.  Willis v. Mullins, No.

13   CIV-F-04-6542 AWI LJO, 2006 WL 2792857, at *1 (E.D. Cal. Sept. 28, 2006) (unpublished).

14          As to defendants' requests to strike demands for punitive and emotional distress

15   damages arising from plaintiffs' various claims, the motion to strike is denied.  That certain

16   requested damages are unavailable as a matter of law is not a legal basis for granting a motion to

17   strike.  Whittlestone, 618 F.3d at 972-74 ("Rule 12(f) does not authorize a district court to strike

18   a claim for damages on the ground that such damages are precluded as a matter of law.").  In

19   Whittlestone, the Ninth Circuit Court of Appeals held that a claim for consequential damages

20   could not be stricken as immaterial or impertinent under Rule 12(f): "[t]he claim for damages is

21   not immaterial, because whether these damages are recoverable relates directly to the plaintiff's

22   underlying claim for relief . . . the claim for damages is not impertinent, because whether these

23   damages are recoverable pertains directly to the harm being alleged."  Whittlestone, 618 F.3d at

24   974 (internal citations omitted).  Like the defendants in Whittlestone, the defendants in this case

25   appear to be attempting to use Rule 12(f) for a purpose better suited to a Rule 12(b)(6) motion to

26   dismiss.  Further, because plaintiffs shall receive leave to amend the facts supporting their fraud

30

1    claim, it would be premature to conclude that punitive damages arising therefrom are

2    unavailable.  Moreover, trial courts are not permitted to determine disputed and substantial

3    factual or legal issues in deciding a motion to strike.  Id.

4         Moreover, the court's inquiry is limited to whether the statement constitutes either

5    an insufficient defense, or a redundant, immaterial, impertinent, or scandalous matter under Rule

6    12(f), and defendants have not explained how the requested damages fit into any of these specific

7    categories.  (See id.; Mot. to Strike at 1-4.)  Defendants have not shown that the requested

8    damages have "no possible bearing on the subject matter of the litigation." LeDuc, 814 F. Supp.

9    at 830.

10        Finally, defendants bear the burden on their motion to strike and the standard for

11   granting such a motion is high, see Willis, 2006 WL 2792857 at *1, yet defendants cite only two

12   cases in arguing that emotional distress damages are unavailable to plaintiffs as a matter of law.

13   (Mot. to Strike at 4.)  However, neither cited case involved the foreclosure of a family home and

14   alleged emotional distress damages arising therefrom.  Further, both cited cases are state court

15   cases; neither case involved Federal Rule 12(f) and the legal standards applicable thereunder.

16   Because this case proceeds in federal court, Rule 12(f) is the procedural rule governing the

17   pending motion to strike; precedent analyzing motions to strike brought in state court under a

18   different procedural rule does not offer much guidance here.

19        Accordingly, the remaining requests within the motion to strike are "really an

20   attempt to have certain portions of [plaintiff's] complaint dismissed . . . ." Whittlestone, 618

21   F.3d at 974.  Therefore, the motion to strike is denied.  Going forward, defendants may have

22   valid arguments regarding the unavailability of certain damages.  However, defendants will have

23   the opportunity challenge such damages on summary judgment, and/or to properly move to

24   dismiss those damages claims if they remain in any amended pleading that plaintiffs file in

25   accordance with this order.

26   ////

1   V.      <u>CONCLUSION</u>

2             For the reasons stated above, IT IS HEREBY ORDERED that:

3             1.      Defendants' motions to dismiss (Dkt. No. 11) is granted in part and denied

4   in part.

5             a.      As to the argument that plaintiffs' claims fail because they are

6   based on allegations that are "inconsistent with judicially noticeable documents and plaintiffs'

7   admissions in the bankruptcy action" (Mot. to Dismiss at 3-4), the motion to dismiss is denied.

8             b.      As to the argument that plaintiffs' claims are barred by "res

9   judicata" given the plaintiffs' involvement in a prior unlawful detainer action, the motion to

10  dismiss is denied.

11            c.      As to the argument that plaintiffs' negligence claim fails, the

12  motion to dismiss is denied.

13            d.      As to the argument that plaintiffs' fraud claim fails due to lack of

14  specificity under Federal Rule of Civil Procedure 9, the motion to dismiss is granted, and

15  plaintiffs' fraud claim is dismissed.  However, such dismissal is without prejudice.  Plaintiffs

16  shall have leave to amend their fraud claim to allege specific misrepresentations by the

17  defendants (i.e., communications from defendants indicating that plaintiffs were current on their

18  mortgage, or the like), by whom and to whom, as well as when and where the misrepresentations

19  occurred, as well as how plaintiffs allegedly relied on the misrepresentations and what damages

20  arose from such reliance.  Further, prior to crafting their amended fraud claim, plaintiffs shall

21  consider defendants' argument that plaintiffs' fraud claim impermissibly duplicates plaintiffs'

22  contract claim.  Plaintiffs should be prepared to address defendants' argument in future briefing,

23  and should abandon one claim or the other if plaintiffs' counsel determines that both cannot be

24  brought in good faith.

25            e.      As to the argument that plaintiffs' claim to set aside the trustee's

26  sale is barred by a "presumption" of validity attached to documents recorded in connection with

32

1    that trustee's sale, the motion to dismiss is denied.

2                f.     As to the argument that plaintiffs' claim to set aside the trustee's

3    sale fails due to lack of a "tender" allegation, given that plaintiffs have alleged that they were

4    current on their mortgage payments prior to the foreclosure, the motion to dismiss is denied.

5                g.     As to the argument that plaintiffs' claim to "void or cancel" the

6    trustee's deed upon sale is a remedy rather than a claim for relief, the motion to dismiss is

7    granted.  Plaintiffs' claim to "void or cancel" the trustee's deed upon sale is dismissed with

8    prejudice.

9                h.     As to the argument that plaintiffs' breach of contract claim fails,

10   the motion to dismiss is denied.  However, based on plaintiffs' counsel's statements during the

11   hearing with respect to plaintiffs' breach of contract claim, to improve the clarity of that claim

12   and to insure the allegations supporting that claim are all properly contained within plaintiffs'

13   pleading, plaintiffs shall also amend their pleading to include Exhibits 1 through 3 of plaintiffs'

14   opposition brief, along with further clarifying allegations regarding the alleged "modification

15   agreement" and its alleged terms and conditions.  Plaintiffs' amended breach of contract claim

16   shall also expressly clarify which contract(s) form(s) the basis or bases for the claim: the alleged

17   "modification agreement," the loan agreement, and/or some other agreement.

18               i.     As to the argument that plaintiffs' claim for violation of the

19   implied covenant of good faith and fair dealing fails, the motion to dismiss is denied.  However,

20   this particular claim appears to be erroneously alleged against "ONEWEST," an entity that is not

21   a party to this action.  (Compl. at 12; Mot. to Dismiss at 18.)  Therefore, plaintiffs shall amend

22   the claim so that it names a defendant or defendants in this action.

23               j.     As to the argument that plaintiffs' unjust enrichment claim fails,

24   the motion to dismiss is granted.  Plaintiffs' unjust enrichment claim is dismissed with prejudice.

25   However, plaintiffs are free to include a request for damages arising from unjust enrichment

26   within the Prayer for Relief in their amended pleading.

1          k.     As to the argument that plaintiffs' claim for violation of the unfair

2   competition law (Cal. Bus. & Prof. Code § 17200) fails, the motion to dismiss is granted and the

3   claim is dismissed.  However, such dismissal is without prejudice.  Plaintiffs shall have leave to

4   amend the claim to correct for the deficiencies in their fraud claim, which is largely entwined

5   with their unfair competition law claim.  Further, prior to crafting their amended unfair

6   competition law claim, plaintiffs shall consider defendants' argument that plaintiffs lack standing

7   to bring such a claim (Mot. to Dismiss at 21).  Plaintiffs should abandon the claim if plaintiffs'

8   counsel determines that it cannot be brought in good faith; otherwise, plaintiffs shall amend their

9   claim so as to clearly describe the damages they allege in connection with the claim, including

10  allegedly lost money or property due to defendants' allegedly deceptive business practices.  Such

11  damages should be alleged as part of plaintiffs' unfair competition law claim (i.e. beneath the

12  heading for that claim).

13         l.     As to the argument that plaintiffs' claims are preempted by HOLA,

14  the motion to dismiss is denied on grounds that defendants have not made the threshold showing

15  that they are in the position to assert such preemption in this case.

16         2.     In accordance with the foregoing, within 30 days of the date of entry of

17  this order plaintiffs shall file an amended complaint that is complete in itself.  The amended

18  complaint must bear the docket number assigned to this case and must be entitled "First

19  Amended Complaint."  Plaintiffs must file an original and one copy of the First Amended

20  Complaint.  Additionally, plaintiffs are informed that the court cannot refer to prior pleadings in

21  order to make an amended complaint complete.  Eastern District Local Rule 220 requires that an

22  amended complaint be complete in itself.  This is because, as a general rule, an amended

23  complaint supersedes the original complaint.  See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967)

24  ("The amended complaint supersedes the original, the latter being treated thereafter as

25  non-existent.").  Accordingly, once plaintiffs file an amended complaint, previously-filed

26  versions of the complaint no longer serve any function in the case.

1    3.    Defendants' request for judicial notice (Dkt. No. 13) is granted with

2 respect to the exhibits specifically discussed herein.

3    4.    Defendants' motion to strike (Dkt. No. 12) is denied.

4    5.    Given that plaintiffs' pleading has not yet become "at issue" in this case,

5 the Status (Pretrial Scheduling) Conference currently set for May 3, 2012 in this matter is hereby

6 vacated.  **The Status (Pretrial Scheduling) Conference is reset for Thursday, August 2, 2012,**

7 **at 10:00 a.m., in Courtroom 25.**

8    IT IS SO ORDERED.

9 DATED: April 19, 2012

10

11

12    KENDALL J. NEWMAN
    UNITED STATES MAGISTRATE JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26