Breyon J. Davis (269680)
**LAW OFFICES OF BREYON J. DAVIS**
965 University Avenue, Suite 150
Sacramento, California 95825
breyon@breyondavislaw.com
Tel (916) 993-4120
Fax (916) 993-4122

Attorney for Plaintiffs
HECTOR ALBIZO & MARY ALBIZO

# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HECTOR ALBIZO & MARY ALBIZO, <br><br> Plaintiffs, <br> vs. <br><br> WACHOVIA MORTGAGE; WELLS FARGO BANK, N.A.; NDEX WEST LLC; and DOES 1-20, inclusive, <br><br> Defendants. | Case No.: 2:11-cv-02991-KJN <br><br> **PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DAMAGES:** <br><br> 1. Negligence <br> 2. Set Aside Trustee's Sale <br> 3. Breach of Contract <br> 4. Breach of Implied Covenant of Good Faith <br><br> **DEMAND FOR JURY TRIAL** |

COMES NOW Plaintiffs Hector Albizo and Mary Albizo ("Plaintiffs") who respectfully aver and allege as follows:

## JURISDICTION AND VENUE

1. On or around November 9, 2011 Defendants WACHOVIA MORTGAGE and WELLS FARGO BANK, N.A. removed this action from Placer County Superior Court Case Number SCV0030037 to the Eastern District Court of California on the basis of Diversity under 28 U.S.C. § 1332 because the citizenship of the parties is entirely diverse and the amount in controversy exceeds $75,000. (See Docket No. 1). Venue is proper in the Eastern branch of this

Court pursuant to 28 U.S.C. § 1391(b) and local rules because the Subject Property at issue is located in Placer County, California.

## PARTIES

2.  Plaintiffs HECTOR ALBIZO and MARY ALBIZO at all relevant times were over the age of 18 and residents of Roseville, California. Plaintiffs were the owners of the property located at 7033 Ludlow Drive in Roseville, California 95747 (hereinafter "Subject Property") secured by a mortgage and deed of trust recorded in the Placer County Recorder's Office as Document No. 2006-0087087 (See Dkt. No. 13 Exhibits A & B). On or around July 18, 2011 Defendants WACHOVIA MORTGAGE, WELLS FARGO BANK, N.A., NDEX WEST LLC; and DOES 1-20, inclusive (collectively "Defendants") wrongfully foreclosed upon the Subject Property forcing Plaintiffs from their home.

3.  Defendant WACHOVIA MORTGAGE ("WACHOVIA") previously known as World Savings Bank, FSB is now a wholly owned subsidiary of Wells Fargo Bank, N.A. and at all times mentioned herein, organized and existed under the laws of the State of California, doing business in Placer County, California. WACHOVIA's listed agents address for service of process posted on the California Secretary of State web-site is 2730 Gateway Oaks Drive, Suite 100, Sacramento, California 95833.

4.  Defendant WELLS FARGO BANK, N.A. ("WFBNA") is a corporation organized and existing as the successor in interest to WACHOVIA, the recent servicer of Plaintiffs' loan. WFBNA is also the successor in interest to World Savings Bank, FSB as it was a subsidiary of WACHOVIA and was the original lender on Plaintiffs' loan listed in the Deed of Trust dated August 7, 2006. At all times mentioned herein WFBNA through WACHOVIA and World Savings Bank, FSB were doing business in Placer County, California. WFBNA's listed agents address for service of process posted on the California Secretary of State web-site is 2730 Gateway Oaks Drive Suite 100, Sacramento, California 95833. Any and all references to WACHOVIA shall be read to include WFBNA at all times mentioned herein and any and all references to WFBNA shall also be read to include WACHOVIA at all times mentioned herein.

5. At all times mentioned herein, NDEX WEST, L.L.C. ("NDEX") was allegedly appointed as the foreclosing trustee doing business in Placer County. NDEX's listed agents address for service of process posted on the California Secretary of State web-site is 15000 Surveyor Boulevard, Suite 100, Addison, Texas 75001. NDEX recorded the Notice of Default with Placer County against the Subject Property unbeknownst to Plaintiffs and without the existence of a true default thus causing the November 2, 2010 sale date which started the bulk of Plaintiffs' damages.

6. Plaintiffs do not know the true names and capacities of the defendants sued herein as DOES 1 through 20 ("DOE Defendants"), inclusive, and therefore sues said DOE Defendants by fictitious names. Plaintiffs are informed and believe and based on such information and belief aver that each of the DOE Defendants is contractually, strictly, negligently, intentionally, vicariously liable and or otherwise legally responsible in some manner for the acts and omissions described herein. Plaintiffs will amend this Complaint to set forth the true names and capacities of each DOE Defendant when same are ascertained.

7. Plaintiffs are informed and believe, and thereon allege, that at all times herein mentioned, each Defendant sued herein in relation to the property they claim an interest in was the agent and/or employee of each of the remaining defendants thereof and at all times was acting within the purpose and scope of such agency and/or employment.

8. Whenever in this Complaint an act or omission of a corporation, partnership or other business entity is alleged, the allegation shall be deemed to mean and include an allegation that the corporation, partnership or other business entity acted or omitted to act through its authorized officers, directors, agents, servants and/or employees, acting within the course and scope of their duties, that the act or omission was authorized by corporate managerial officers or directors, and that the act or omission was ratified by the officers and directors of the corporation or business entity.

## GENERAL ALLEGATIONS

9. Plaintiffs were the owners of the Subject Property, a single family residence where Plaintiffs resided with their family until September 27, 2011. Plaintiffs financed the

PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DAMAGES

1  Subject Property in or around August of 2006, utilizing World Savings Bank, FSB, now
2  WACHOVIA, as their initial lender and loan servicer.

3       10.    Plaintiffs executed a promissory note in favor of World Savings Bank, FSB which
4  was secured by a deed of trust naming World Savings Bank, FSB as the lender and beneficiary.

5       11.    Plaintiffs made each payment due on their new loan.

6       12.    In or around October of 2007 World Savings Bank, FSB merged with
7  WACHOVIA who began servicing Plaintiffs' mortgage loan.

8       13.    On or around January of 2009, Wells Fargo & Co. (parent to WFBNA) bought
9  and merged with WACHOVIA.

10      14.    Plaintiffs' mortgage loan was impacted by two separate mergers during the first
11 three years of the life of the loan. Plaintiffs continued to make their payments remitting them to
12 WACHOVIA, a Wells Fargo Company through an automatic payment plan set-up by and
13 through World Savings Bank, FSB now WACHOVIA. WACHOVIA continued debiting
14 Plaintiffs' account for their monthly payments through the auto-payment plan already
15 established.

16      15.    In or around July of 2010 Plaintiffs received a call from WACHOVIA stating that
17 they were behind on their mortgage. Plaintiffs discovered that WACHOVIA presumptively due
18 to the merger and transition with WFBNA and in an effort to collect late fees and additional
19 charges, failed to withdraw the automatic payments from Plaintiffs account as had been
20 established for the previous four years.

21      16.    WACHOVIA instructed Plaintiffs to make a payment in the amount of
22 $14,344.35 to bring the account current. Plaintiffs were only allegedly behind 2 months due to
23 WACHOVIA's negligence which is equivalent to $5,338.28, not $14,344.35. Plaintiffs allege
24 based on information and belief that WACHOVIA intentionally failed to withdraw payments so
25 they could profit an additional $10,000 in fees and accruing interest on top of capitalized
26 principal. Plaintiffs made the payment as instructed and received a letter of confirmation dated
27 August 27, 2010 that the account was current and the new loan balance would be $425,410.78.
28 (See August 27, 2010 Letter from WACHOVIA, attached hereto as **Exhibit One**).

PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DAMAGES

17. In a letter dated August 27, 2010, WACHOVIA informed Plaintiffs that they received the $14,344.35 payment, that Plaintiffs account was current and that the letter is the receipt for the payment. See Exhibit One. Believing WACHOVIA's failure to deduct their payments was a scheme to make money; Plaintiffs refused to enter into an automatic payment system and instead began sending monthly checks with their mortgage statement.

18. On or about September 20, 2010 Plaintiffs sent a check payment in the amount of $2,669.14 which was cashed by WACHOVIA on or around September 22, 2010. (See September 2010 payment made from Golden One Credit Union, attached hereto as **Exhibit Two**).

19. In or around October of 2010 Plaintiffs made a check payment in the amount of $2,669.14 - check number 80741514. The funds were withdrawn by WACHOVIA on or around October 14, 2010. . (See October 2010 payment made from Golden One Credit Union, attached hereto as **Exhibit Three**).

20. Plaintiffs were current on their monthly payments.

21. On or about Friday evening of October 29, 2010 Plaintiffs received a call from a neighbor John Beck who receives the Roseville local paper and informed Plaintiff Hector Albizo that his property was to sell at an auction scheduled the next day, on or around November 2, 2010. Plaintiff Hector Albizo was provided a copy of the newspaper article once he reached home which states: "YOU ARE IN DEFAULT UNDER A DEED OF TRUST, DATED 08/07/2006. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROEPRTY, IT MAY BE SOLD AT A PUBLIC SALE…..SALE DATE 11/02/2011." (See Newspaper Clipping, attached hereto as **Exhibit Four**).

22. Plaintiffs were panicked and confused as all payments had been made, they were not in default on the mortgage loan, they had not received any notices regarding a sale of the Subject Property, nor should they have received any notices being they were current on their loan payments. Plaintiffs called WACHOVIA Friday evening and were told it was too late to do anything and that no one in the foreclosure department would be available until Monday, November 1, 2010.

PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DAMAGES

23. On or about October 29, 2010 Plaintiffs sent a letter to WACHOVIA with attention to the "Foreclosure Department" enclosing copies of all mortgage payments stating: "[w]e have copies of payments being made and letters from your company. Please let us know where these payments are. We made payments as instructed by you. We were not aware of the foreclosure proceedings until today!"

24. Plaintiffs immediately contacted an attorney for advice. Plaintiffs were informed that a chapter 13 bankruptcy would stay the sale of the property and that it was the only thing they could do with limited time.

25. Under immense time constraints, pressure, anxiety and pain Plaintiffs quickly sought attorney Eliza Ghanooni, Esq. to file a chapter 13 bankruptcy in Plaintiff Mary Albizo's name alone. On or about November 2, 2010 the chapter 13 bankruptcy was filed. The bankruptcy filing stayed the scheduled November 2, 2011 sale of Plaintiffs' Subject Property.

26. Plaintiffs still continued making their payments to WACHOVIA.

27. Plaintiffs further allege upon information and belief that in or around December of 2010, Mary Albizo attended the bankruptcy hearings and meet with the mediator and neither of the two creditors Plaintiffs had (WACHOVIA and Harley Davidson) appear for the hearings. The bankruptcy court agrees to the terms as proposed by attorney Eliza Ghanooni, Esq. - a payment plan for Harley Davidson and continued payments to WACHOVIA which were never truly in default in the first instance.

28. On or about the last week of December of 2010, Mary Albizo sent the bankruptcy payment plan check as agreed to by the court. On or about December 30, 2010, Plaintiffs' mortgage payment was made as a disbursement of the bankruptcy in the amount of $2,669.14.

29. Plaintiffs further allege based upon information and belief that in or around January of 2011, Plaintiffs' attorney worked on negotiations with WACHOVIA and Harley Davidson. Plaintiffs' were advised that WACHOVIA would work on a loan modification for them. The bankruptcy court was informed by Plaintiffs' attorney that negotiations with WACHOVIA and Harley Davidson were in the works and no further payments to the bankruptcy court would be necessary because she intended to dismiss the case.

30. In or around February of 2011 Plaintiffs call WACHOVIA checking on the status of the notice of bankruptcy dismissal. WACHOVIA informed Plaintiffs that they had not yet heard from the bankruptcy court.

31. In or around March of 2011 Plaintiffs were unable to make payments to WACHOVIA because the bankruptcy dismissal was still pending and the bankruptcy court was no longer accepting payments. But for WACHOVIA's negligence in failing to withdraw Plaintiffs' payments, no bankruptcy would have been necessary to stop the foreclosure sale of the Subject Property. All payments had been made. See Exhibits One, Two and Three.

32. In or around April of 2011 WACHOVIA received the dismissal and informed Plaintiffs to send them a check in the amount of $2,652.21 for their March 2011 payment. Plaintiffs sent check number 1035 in the amount of $2,652.21 as instructed by WACHOVIA. WACHOVIA did not cash the check and apply it toward Plaintiffs' March 2011 payment as WACHOVIA instructed would occur.

33. In or around May of 2011, Plaintiffs received a call from Mrs. Paulson with WACHOVIA who instructed Plaintiffs that a loan modification application through the Making Homes Affordable Plan would need to be submitted if they wanted to be considered for a modification of their mortgage loan. Plaintiffs completed the application and sent it to WACHOVIA.

34. In or around June of 2011, Plaintiffs were informed by WACHOVIA that they were still waiting for the Litigation Department to review their mortgage loan and modification file before sending the file back to the Loan Modification Department.

35. In or around July of 2011, WACHOVIA informed Plaintiffs that they qualified for a loan modification. Plaintiffs immediately called WACHOVIA to discuss the new loan terms and what the new monthly payment would be.

36. On or around July 7, 2011, Plaintiffs received a call from Mr. Hall of WACHOVIA from phone number (877) 546-8827 who informed them that a loan modification had been approved for the Subject Property, that the new monthly payments would be $2,186.41 and that payment would be due by August 1, 2011. Mr. Hall informed Plaintiffs that written

PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DAMAGES

confirmation would be mailed to them explaining all of the terms. Plaintiffs immediately mailed their payment of $2,186.41 in check number 1042 for their August 1, 2011 payment and acceptance of the loan modification. (See Loan Modification Acceptance Payment Check dated July 8, 2011 attached hereto as "**Exhibit Five**").

    37.    In a letter dated July 29, 2011 WACHOVIA confirmed Plaintiffs loan modification in writing requesting that they sign and return the enclosed form accepting the offer. (See Loan Modification Offer, attached hereto as "**Exhibit Six**"). This written offer confirmed Plaintiffs telephonic conversation with WACHOVIA on or around July 7, 2011 wherein they were informed by Mr. Hall (a representative of WACHOVIA) of the loan modification offer and what their monthly payments would be. WACHOVIA further confirmed in the same letter that their new monthly payment would be $2,186.41 effective August 1, 2011 – the same amount and date they were told on July 7, 2011 by Mr. Hall. Plaintiffs had already mailed this payment on July 8, 2011 and WACHOVIA received, accepted and cashed check number 1042 for $2,186.41 on July 11, 2011. (See Exhibit Five). As this July 29, 2011 letter confirmed what Plaintiffs' were told by Mr. Hall of WACHOVIA on July 7, 2011, Plaintiffs signed and returned the enclosed modification agreement prior to the August 5, 2011 deadline. See Exhibit Six.

    38.    Pursuant to the Loan Modification Offer as communicated by WACHOVIA's loan modification representative Mr. Hall on July 7, 2011 and WACHOVIA's Loan Modification Offer Letter dated July 29, 2011, the terms Loan Modification Agreement were as follows: 1) Plaintiffs were to make a payment prior to and applicable for August 1, 2011 in the amount of $2,186.41; 2) the new payment was calculated using the estimated loan balance of $390,550.76 on July 29, 2011; 3) interest was calculated at 5.50 percent; 4) new payment amount will be in effect through and including the payment due September 1, 2011; 5) next payment change will occur on October 1, 2011; 6) the billing statement will reflect the total amount due if an escrow account exists for taxes and insurance; 7) the Modification Agreement must be signed and returned by August 5, 2011.

    39.    Plaintiffs further allege based upon information and belief that they accepted the terms of the Modification Offer and Agreement by: 1) mailing their payment of $2,186.41 with

check number 1041 on July 8, 2011 which was cashed by WACHOVIA on July 11, 2011 (see Exhibit Five); 2) signing and returning the Modification Agreement to WACHOVIA prior to the August 5, 2011 deadline.

40. On or around late August of 2011 Plaintiffs received a letter from WACHOVIA dated August 23, 2011 which states: "[w]e have reinstated your loan...your monthly payment is $2,184.41 which includes taxes and insurance. You will receive monthly statement within the next month." (See WACHOVIA Reinstatement Letter dated August 23, 2011, attached hereto as **"Exhibit Seven"**).

41. In or around September of 2011, Plaintiffs received another call from WACHOVIA's loan modification representative Mr. Hall WACHOVIA stating that they would receive their regular statement on or before the 10th of September at the latest and to send the stub on the bottom of the statement with their payment.

42. On or about September 10, 2011, Plaintiffs called WACHOVIA informing them that they never received the statement. Plaintiffs made numerous unreturned phone calls to WACHOVIA who simply ignored them, refusing to communicate why Plaintiffs had not received their mortgage statement as indicated not only in the early September call, but also the August 23, 2011 letter. See Exhibit Seven.

43. Plaintiffs never received the September statement from WACHOVIA.

44. On or about September 21, 2011 Plaintiffs received a final Notice to Vacate the Subject Property by September 27, 2011 from the Sheriff.

45. On or around September 22, 2011, unbeknownst to Plaintiffs, they discovered the Subject Property was wrongfully sold in a non-judicial foreclosure sale by foreclosing trustee NDEX to WFBNA, the beneficiary and creditor. According to records, the sale took place on or around July 18, 2011 without any notice to Plaintiffs.

46. The amount of unpaid debt together with costs at the time of the foreclosure sale was $551,098.22. (See Trustee's Deed Upon Sale, Dkt. 13, No. V, p. 79). WACHOVIA/WFBNA purchased the property back at approximately half the price - $272,637.00. (Dkt. 13, Exhibit V, p. 79). Plaintiffs were locked out of their home by the

PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DAMAGES

Sheriffs on September 27, 2011 and the Subject Property closed escrow <u>one month later</u> on or around November 28, 2011 for $345,000 (a profit of $72,363.00!) (See MLS listing 11076296 or go to http://www.redfin.com/CA/Roseville/7033-Ludlow-Dr-95747/home/19639260).

47. Plaintiffs allege based upon information and belief that they never received a Notice of Default on their said property as they were never in default. See Exhibits One, Two, Three, Five, Six and Seven.

48. Plaintiffs allege based upon information and belief that they never received a Notice of Trustee sale for the Subject Property – as there never should have been a trustee sale. See Exhibits Five, Six and Seven.

49. At all times mentioned in this Complaint, Plaintiffs were making their payments to WACHOVIA either electronically, manually and/or by means of an agreement through the course of negotiations in furtherance of their loan modification offer on July 7, 2011 and offer letter dated July 29, 2011.

50. Plaintiffs further allege based upon information and belief that they never received Notice of Unlawful Detainer from WFBNA.

51. Plaintiffs alleged based upon information and belief that they never received a 3/30/90 Day Notice to Vacate the Subject Property from WFBNA.

52. Plaintiffs were locked out of their home by the Sheriffs on September 27, 2011.

53. The Subject Property was listed for sale on the market within two weeks after Plaintiffs were locked-out.

54. The Subject Property closed escrow <u>one month later</u> on or around November 28, 2011 at a profit of $72,363.00 to WACHOVIA/WFBNA.

### FIRST CAUSE OF ACTION
### NEGLIGENCE
### (AGAINST ALL DEFENDANTS)

55. Plaintiffs incorporate herein by reference the allegations made in paragraphs 1-54, inclusive, as though fully set forth herein.

56. At all times relevant herein, WACHOVIA, WFBNA, NDEX and DOES 1-20, acting as Plaintiffs' lender, servicer and foreclosing trustee, had a duty to exercise reasonable

care and skill to maintain proper and accurate loan records and to discharge and fulfill the other incidents attendant to the maintenance, accounting and servicing of loan records, including, but not limited to, accurate crediting of payments made by Plaintiffs.

57. NDEX breached their duty when foreclosing on the Subject Property pursuant to a Notice of Default that was invalid as Plaintiffs were not truly in default. See Exhibits One, Two, Three and Seven.

58. Further, WACHOVIA and WFBNA had a duty to comply with the contractual terms of their Loan Modification Offer which was orally communicated to Plaintiffs on July 7, 2011 and expressly communicated in writing on or around July 29, 2011. Per Exhibit Five, Six and Seven, Plaintiffs were offered a loan modification wherein their new payments were to be $2,186.41 as opposed to the $2,669.14 they were currently paying. See Exhibits Two and Three. Pursuant to the Loan Modification Offer as communicated by WACHOVIA's loan modification representative Mr. Hall on July 7, 2011 and WACHOVIA's Loan Modification Offer Letter dated July 29, 2011, the terms were as follows: 1) Plaintiffs were to make a payment prior to and applicable for August 1, 2011 in the amount of $2,186.41; 2) the new payment was calculated using the estimated loan balance of $390,550.76 on July 29, 2011; 3) interest was calculated at 5.50 percent; 4) new payment amount will be in effect through and including the payment due September 1, 2011; 5) next payment change will occur on October 1, 2011; 6) the billing statement will reflect the total amount due if an escrow account exists for taxes and insurance; 7) the Modification Agreement must be signed and returned by August 5, 2011.

59. Plaintiffs accepted the terms of the Modification Offer and Agreement by: 1) mailing their payment of $2,186.41 with check number 1041 on July 8, 2011 which was cashed by WACHOVIA on July 11, 2011 (see Exhibit Five); 2) signing and returning the Modification Agreement to WACHOVIA prior to the August 5, 2011 deadline.

60. While California courts have held that as a general rule "a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money," (*Nymark v. Heart Fed. Savings & Loan Assn.*, (1991) 231 Cal.App.3d 1089, 1096), initiating and carrying-out non-judicial foreclosure proceedings according to California Code of Civil Procedure Section 2924 is

NOT the conventional role of a "mere money lender." Thus, Defendants have exceeded the scope of the simple loan transaction when corresponding with Plaintiffs regarding loan reinstatement (Exhibits One and Seven) and when negotiating and offering a loan modification See Exhibits Five and Six. Accordingly, Defendants' conduct is subject to a cause of action for negligence brought forth by Plaintiffs as they owed a duty to comply with the rules of Section 2924 in the context of initiating non-judicial foreclosure procedures and not the processing or qualification of a mortgage loan.

61.   Further, WACHOVIA and WFBNA assumed a duty to comply with the terms of the Loan Modification Agreement when making the offer on July 7th and 29th of 2011 and breached their duty to comply when foreclosing on Plaintiffs property on or around July 18, 2011 – one week after cashing Plaintiffs first Loan Modification payment. See Exhibits Five and Six.

62.   In taking the actions alleged above, and in failing to take the actions as alleged above, WACHOVIA, WFBNA, NDEX and DOES 1-20 breached their duty of care and skill to Plaintiffs in the servicing of Plaintiffs' loan by, among other things, failing to comply with the terms of their Loan Modification Agreement, failing to properly and accurately credit payments made by Plaintiffs toward the loan, preparing and filing false documents in order to foreclose on the Subject Property, and actually foreclosing on the Subject Property without having the legal authority and/or proper documentation to do so.

63.   As a direct and proximate result of the negligence and carelessness of WACHOVIA, WFBNA, NDEX and DOES 1-20 as set forth above, Plaintiffs suffered general and special damages in an amount in excess of $200,000.

### SECOND CAUSE OF ACTION
### TO SET ASIDE TRUSTEE'S SALE
### (AGAINST ALL DEFENDANTS)

64.   Plaintiffs incorporate herein by reference the allegations made in paragraphs 1 through 63, inclusive, as though fully set forth herein.

65.   WACHOVIA, WFBNA, NDEX and DOES 1-20 never had the legal authority to foreclose, i.e., the authority to exercise the power of sale as an assignee of the Note and Deed of Trust, because Plaintiffs were never in default and were never sent a Notice of Default in

violation of California Civil Code Section 2924, resulting in the non-judicial foreclosure sale being void ab initio.

66. Moreover, WACHOVIA, WFBNA, NDEX and DOES 1-20 never had the legal authority to foreclose because California Civil Code Section 2924(b) states that the power of sale cannot be exercised until the proper notices are given for the time and manner as proscribed in Section 2924. Defendants did not comply as described herein. Therefore, any alleged Notice of Default never received by Plaintiffs could not provide a basis for a foreclosure, and the non-judicial foreclosure is void ab initio.

67. As to setting aside the trustee sale due to Plaintiffs never being in default, Plaintiffs were in compliance with the Loan Modification terms provided to them on July 7th and July 29th, 2011 and thus any record that a default existed was false and the subsequent foreclosure sale must necessarily be set aside. See Exhibits Five, Six and Seven. California Civil Code Section 2924(a)(1) states that prior to effecting a power of sale provision that "[t]he trustee, mortgagee, or beneficiary, or any of their authorized agents shall first file for record, in the office of the recorder of each county wherein the mortgaged or trust property or some part or parcel thereof is situated, a notice of default…" This statute implies that borrowers of real property be in default prior to carrying-out a non-judicial foreclosure. WACHOVIA, WFBNA, NDEX and DOES 1-20 in bad faith, proceeded with foreclosure upon the Subject Property at a time when no default existed.

68. Accordingly, Plaintiffs hereby request an Order of this Court that the Trustee's Sale was irregular in that it was legally void and conducted without any right or privilege by WACHOVIA, WFBNA, NDEX and DOES 1-20.

### THIRD CAUSE OF ACTION
### BREACH OF CONTRACT
### (AGAINST WACHOVIA, WFBNA and DOES 1-20)

69. Plaintiffs incorporate herein by reference the allegations made in paragraphs 1 through 68, inclusive, as though fully set forth herein.

70. Plaintiffs further allege upon information and belief that the following contracts exist(ed) and that WACHOVIA, WFBNA and DOES 1-20 breached those said contracts, namely

**1)** Plaintiffs original loan agreement (with adjustable rate mortgage note) and deed of trust executed on or around August of 2006 with World Savings Bank, FSB – now WACHOVIA- recorded on August 15, 2006 in the Placer County Recorder's Office as Document No. 2006-0087087 (See Dkt. No. 13 No. Exhibits A & B) and **2)** Plaintiffs' Loan Modification Agreement presented, communicated and accepted by Plaintiffs on July 7th and 29th of 2011. Exhibit Six.

71.  Plaintiffs' original loan agreement set forth dates by which monthly principal and interest payments were due, and when late fees and other charges could be assessed. In Docket Number 13, Exhibit A, page 9, section four and subsection (1), borrower agreed to pay all principal and interest due under the Secured Notes and Plaintiffs complied with this obligation when opting for automatic electronic withdrawals of their mortgage payment from their bank account.

72.  Accordingly, WACHOVIA breached this agreement when unilaterally deciding to stop electronic debiting of Plaintiffs' monthly mortgage payments only to later inform them they were "behind" - but not short of accessing them late fees, thus increasing the principal and interest of the loan.

73.  The second contract WACHOVIA, WFNBA and DOES 1-20 breached is Plaintiffs' Loan Modification Agreement as it was/is a contract certain and definite in its terms.

74.  On or around July 7, 2011, Plaintiffs received a call from Mr. Hall of WACHOVIA from phone number (877) 546-8827 who informed them that a loan modification had been approved for the Subject Property, that the new monthly payments would be $2,186.41 and that payment would be due by August 1, 2011. Mr. Hall informed Plaintiffs that written confirmation would be mailed to them explaining all of the terms. Plaintiffs immediately mailed their payment of $2,186.41 in check number 1042 for their August 1, 2011 payment and acceptance of the loan modification. See Exhibit Five.

75.  In a letter dated July 29, 2011 WACHOVIA confirmed Plaintiffs loan modification in writing requesting that they sign and return the enclosed form accepting the offer. See Exhibit Six. This written offer confirmed Plaintiffs telephonic conversation with WACHOVIA on or around July 7, 2011 wherein they were informed by Mr. Hall (a

representative of WACHOVIA) of the loan modification offer and what their monthly payments would be. WACHOVIA further confirmed in the same letter that their new monthly payment would be $2,186.41 effective August 1, 2011 – the same amount and date they were told on July 7, 2011 by Mr. Hall. Plaintiffs had already mailed this payment on July 8, 2011 and WACHOVIA received, accepted and cashed check number 1042 for $2,186.41 on July 11, 2011. (See Exhibit Five). As this July 29, 2011 letter confirmed what Plaintiffs' were told by Mr. Hall of WACHOVIA on July 7, 2011, Plaintiffs signed and returned the enclosed modification agreement prior to the August 5, 2011 deadline.

76.  Pursuant to the Loan Modification Offer as communicated by WACHOVIA's loan modification representative Mr. Hall on July 7, 2011 and WACHOVIA's Loan Modification Offer Letter dated July 29, 2011, the terms Loan Modification Agreement were as follows: 1) Plaintiffs were to make a payment prior to and applicable for August 1, 2011 in the amount of $2,186.41;  2) the new payment was calculated using the estimated loan balance of $390,550.76 on July 29, 2011; 3) interest was calculated at 5.50 percent; 4) new payment amount will be in effect through and including the payment due September 1, 2011; 5) next payment change will occur on October 1, 2011; 6) the billing statement will reflect the total amount due if an escrow account exists for taxes and insurance; 7) the Modification Agreement must be signed and returned by August 5, 2011. See Exhibit Six.

77.  Plaintiffs further allege based upon information and belief that they accepted the terms of the Modification Offer and Agreement by: 1) mailing their payment of $2,186.41 with check number 1041 on July 8, 2011 which was cashed by WACHOVIA on July 11, 2011 (see Exhibit Five); 2) signing and returning the Modification Agreement to WACHOVIA prior to the August 5, 2011 deadline. See Exhibit Six.

78.  WACHOVIA and WFBNA breached their Loan Modification Agreement when failing to apply Plaintiffs' payment of $2,186.41 made on July 8, 2011 according to the terms as described above.  Further in bad faith WACHOVIA/WFBNA cashed the Loan Modification payment check on July 11, 2011 while turning around and selling Plaintiffs' property one week later. See Exhibit Five.

79. Defendants also breached their agreement with Plaintiffs when foreclosing on the Subject Property without notice and by foreclosing on a mortgage and deed of trust that was current and had been "reinstated" as of WACHOVIA's letter dated August 23, 2011. See Exhibit Seven.

80. As a proximate result of Defendants' breaches, Plaintiffs have suffered compensatory damages in an amount excess of $200,000.

## FOURTH CAUSE OF ACTION
### BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
### (AGAINST WACHOVIA, WFBNA and DOES 1-20)

81. Plaintiffs incorporate herein by reference the allegations made in paragraphs 1 through 80, inclusive, as though fully set forth herein.

82. The loan agreements between Plaintiffs and WACHOVIA/WFBNA included the written Promissory Note, Deed of Trust and the Loan Modification contract for which Plaintiffs detrimentally relied. Each of these agreements contained an implied covenant of good faith and fair dealing under which Defendants were obligated to refrain from engaging in any conduct that would prevent Plaintiffs from fully enjoying the benefits of these contracts.

83. Plaintiffs further allege upon information and believe that the Promissory Note and Deed of Trust carried with it express terms to which Plaintiffs complied when making their monthly payments. Defendants' failure and unilateral decision to stop automatically withdrawing monthly mortgage payments from Plaintiffs account resulted in false claims of default and added fees which capitalized interest and forced Plaintiffs to bankruptcy. The more months Defendants could make the appearance that Plaintiffs skipped payments, the more money the Defendants would make and the closer to foreclosure Plaintiffs would become.

84. Plaintiffs further allege upon information and belief that Defendants breached the covenant of good faith and fair dealing as it applied to their Loan Modification Agreement. See Exhibits Five and Six. Defendants' compliance with the terms of the loan modification as described above in paragraphs 70-78 and Exhibits Five and Six was and remains a benefit to which Plaintiffs are entitled as a binding contractual agreement. However, in failing and refusing to comply in good faith, Defendants breached the implied covenant of good faith and

fair dealing by the following: (1) failing to provide the promised loan modification after Plaintiffs completed the performance required of them under the agreement – paying $2,184.41 beginning August 1, 2011; (2) failing to comply with Civil Code Section 2924 when foreclosing on the Subject Property pursuant to a Notice of Default when Plaintiffs were not in default (see Exhibit Seven); (3) failing to comply with the terms of Plaintiffs' Promissory Note and Deed of Trust when unilaterally refusing to continue automatic debiting of Plaintiffs' monthly mortgage payments which resulted in excess fees, an "alleged" default to Plaintiffs and a forced bankruptcy filing to stop an unprecedented November 2, 2010 trustee's sale.

85. Defendants enjoyed substantial discretionary power affecting the rights of Plaintiffs during the events alleged in this Complaint. They were required to exercise such power in good faith.

86. The Defendants engaged in such conduct to drive Plaintiffs into foreclosure so that they could acquire the Subject Property re-sell it at a bargain basement price to earn instant profit. The amount of unpaid debt together with costs at the time of the foreclosure sale was $551,098.22. (See Trustee's Deed Upon Sale, Dkt. 13, No. V, p. 79). WACHOVIA/WFBNA purchased the property back at approximately half the price - $272,637.00. (Dkt. 13, Exhibit V, p. 79). Plaintiffs were locked out of their home by the Sheriffs on September 27, 2011 and the Subject Property closed escrow <u>one month later</u> on or around November 28, 2011 for $345,000 (a profit of $72,363.00!) (See MLS listing 11076296 or go to http://www.redfin.com/CA/Roseville/7033-Ludlow-Dr-95747/home/19639260).

87. Defendants' actions were in bad faith and constitute breach of the contracts between Plaintiffs and the Defendants which show that they had no intention of performing their contracts, consisting of the original note and deed of trust and the Loan Modification, in good faith.

88. As a direct and proximate result of Defendants' breach of the covenant of good faith and fair dealing described herein, Plaintiffs have suffered damage to their consumer credit history and home mortgage creditworthiness with resulting financial loss, emotional distress,

pain and suffering and they have suffered additional compensatory damages to an amount in excess of $200,000.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for judgment against all of the Defendants and each of them as follows:

1. For a declaration of the rights and duties of the parties, specifically that the foreclosure of Plaintiffs' residence was wrongful;

2. For issuance of an Order canceling all Trustee's Deed Upon Sale;

3. To vacate the Trustee's Deed;

4. To vacate and set aside the foreclosure sale;

5. For compensatory, special and general damages according to proof against all Defendants currently in excess of $200,000;

6. For compensatory, special and general damages according to proof as a result of Defendants' Unjust Enrichment when unlawfully seeking and obtaining title to and possession of the Subject Property herein;

7. For reasonable attorney's fees and costs of suit incurred (pursuant to application of Civil Code Section 1717 through reciprocity principles under Plaintiffs' Promissory Note and Deed of Trust);

8. For leave to amend this complaint if further pleading is requested; and

9. For such other and further relief the Court may deem just and proper.

Dated: May 18, 2012                    /S/ Breyon J. Davis
                                       Breyon J. Davis, Esq.
                                       Attorney for Plaintiffs

- 18 -
PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DAMAGES