IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

HECTOR ALBIZO, *et al.*,

    Plaintiffs,                  No. 2:11-cv-2991 AC C

vs.

WACHOVIA MORTGAGE, *et al.*,

    Defendants.           <u>ORDER</u>

_____/

        On March 13, 2013, the court held a hearing on plaintiffs' February 20, 2013 motion to quash. Breyon Davis appeared for plaintiffs. Melissa Coyle appeared for defendants. On review of the motion, the documents filed in support and opposition, hearing the arguments of counsel, and good cause appearing therefor, THE COURT FINDS AS FOLLOWS:

RELEVANT BACKGROUND

A.    <u>Factual Allegations</u>

        In or around August 2006, plaintiffs Hector and Mary Albizo obtained a mortgage loan from World Savings Bank, FSB (now Wachovia Mortgage ("Wachovia"), a wholly-owned subsidiary of Wells Fargo Bank, N.A. ("Wells Fargo")) secured by real property located at 7033 Ludlow Drive, Roseville, CA 95747 ("the Subject Property"). A deed of trust was recorded in

the Placer County Recorder's Office on August 7, 2006.

In or around July 2010, Wachovia contacted plaintiffs to inform them that they were behind on their mortgage.  Plaintiffs claim that they were not behind on their mortgage payments.  Instead, they accuse Wachovia of failing to withdraw funds through the automatic payment plan that they established through World Savings Bank, FSB.  Plaintiffs maintain that the servicing of their mortgage loan has been impacted by two separate mergers during the first three years of the life of the loan: in or around October 2007, World Savings Bank, FSB merged with Wachovia, who began servicing plaintiffs' mortgage loan, and in on or around January 2009, Wachovia merged with Wells Fargo & Co., parent to Wells Fargo.  Plaintiffs claim that they continued to make payments on their mortgage loan, remitting them to Wachovia through the automatic payment plan, and that any default on the mortgage loan was due to Wachovia's negligence.

Wachovia instructed plaintiffs to make a nearly-$15,000 payment to bring the account current.  Plaintiffs allege that they were only behind two months on their payments, which was approximately $5,000 in arrears, due to Wachovia's negligence, and that the amount sought by Wachovia to bring the account current was too high.  Nonetheless, plaintiffs made the payment as instructed and received a letter of confirmation dated August 27, 2010 that the account was current.  After this incident, which plaintiffs claim was a scheme by Wachovia to make money off of late fees and other charges, plaintiffs refused to continue with the automatic payment plan and instead began sending monthly checks with their mortgage statement.

Plaintiffs claim that they made payments for September and October 2010 and were current on their payments at that time, but on October 29, 2010, plaintiffs learned that the Subject Property was scheduled for a foreclosure sale on November 2, 2010.  Immediately, plaintiffs sent a letter to Wachovia to contest the sale.  They also contacted an attorney, who suggested filing a Chapter 13 bankruptcy petition, which would stay the sale of the Subject Property.

1  On or about November 2, 2010, a bankruptcy petition was filed and the sale of the
2  Subject Property was stayed.  Plaintiffs made the December 2010 mortgage payment as required
3  by the bankruptcy court.  Through their bankruptcy attorney, plaintiffs negotiated with Wachovia
4  for a loan modification.  However, plaintiffs were unable to make their March 2011 payment to
5  Wachovia directly because, although the bankruptcy case was still pending, the bankruptcy court
6  would no longer accept the mortgage payment.

7  In or around April 2011, Wachovia received notice of the bankruptcy case's
8  dismissal and directed plaintiffs to send them a payment for the March 2011 payment.  Plaintiffs
9  sent a check to Wachovia, but the latter did not cash the check.

10  In May 2011, plaintiffs completed an application for a loan modification.  In or
11  around June 2011, plaintiffs were informed by Wachovia that their application was still being
12  reviewed.

13  In or around July 2011, Wachovia informed plaintiffs that they qualified for a
14  loan modification.  On or around July 7, 2011, plaintiffs received a call from a Wachovia
15  representative who discussed the terms of the loan modification.

16  On July 18, 2011, the Subject Property was sold at a non-judicial foreclosure sale.
17  Plaintiffs were unaware of this sale.

18  In July 29, 2011, Wachovia confirmed plaintiffs' loan modification in writing.

19  On or around late-August 2011, plaintiffs received a letter from Wachovia stating
20  that their loan had been reinstated with revised terms pursuant to the loan modification.

21  On September 21, 2011, plaintiffs received a final Notice to Vacate the Subject
22  Property by September 27, 2011 from the Sheriff.  Plaintiffs were locked out of their home by
23  the Sheriff on September 27, 2011.

24  Plaintiffs allege that they never received a Notice of Default, Notice of Trustee
25  Sale, Notice of Unlawful Detainer, or a 3/30/90-Day Notice to Vacate the Subject Property.

26

B. <u>Procedural Background</u>

On October 7, 2011, plaintiffs filed suit in the Placer County Superior Court against defendants Wachovia Mortgage, a division of Wells Fargo Bank, N.A., the successor by merger to Wells Fargo Bank Southwest, N.A., f/k/a/ Wachovia Mortgage, FSB, f/k/a/ World Savings Bank, FSB ("Wells Fargo") and NDeX West[1]. This action was removed to this court on November 9, 2011 pursuant to 28 U.S.C. § 1332 because the citizenship of the parties is entirely diverse and the amount in controversy exceeds $75,000. This action is before the undersigned pursuant to the consent of the parties. ECF No. 26.

Plaintiffs are now proceeding on a first amended complaint ("FAC") filed May 18, 2012 setting forth four claims: (1) negligence, (2) set aside trustee's sale; (3) breach of contract; and (4) breach of the implied covenant of good faith and fair dealing. Plaintiffs seek declaratory and injunctive relief, and damages in the amount of $200,000.

On June 1, 2012, defendants filed an answer to the FAC wherein they also asserted a number of affirmative defenses, including unclear hands. ECF No. 33.

C. <u>Discovery Dispute Background</u>

On February 8 and 11, 2013, defendants served on Bank of America and the Golden 1 Credit Union subpoenas for the production of "All account statements related to [plaintiffs'] checking account[s . . .] from August 1, 2006 through October 31, 2011 . . . ." Plaintiffs objected to these subpoenas as overbroad and irrelevant. The parties met and conferred from February 12, 2013 through February 15, 2013, but were unable to resolve their differences.

DISCUSSION

A. <u>The Parties' Positions</u>

Plaintiffs argue that the subpoenas seek irrelevant information because they ask

---

[1] This defendant was dismissed by stipulation on July 31, 2012. ECF Nos. 40-41.

4

for documents that pre-date the contested events set forth in the FAC.  They argue that their bank records are only relevant for the time frames surrounding the first foreclosure date of November 2, 2010 and the July 2011 loan modification.  Plaintiffs also assert a privacy objection.

Defendants counter that the documents sought are directly relevant not only to plaintiffs' claims but also to defendants' affirmative defenses.  Lastly, defendants accuse plaintiffs of forging documents and lying to the court.  Defendants seek sanctions.

B.   Analysis

   1.   Privacy

Plaintiffs' motion to quash is premised on relevancy and privacy objections.  The court begins with plaintiffs' privacy objection.  In Valley Bank of Nevada v. Superior Court, 15 Cal.3d 652, 656 (Cal. 1975), the court found "the general rule appears to be that there exists no common law privilege with respect to bank customer information."  Rather, "one's confidential financial affairs as well as [ ] the details of one's personal life" is protected by the constitutional right to privacy.  Id.  The "right of privacy is not absolute; it may be abridged to accommodate a compelling public interest."  Moskowitz v. Superior Court, 137 Cal. App. 3d 313, 316 (Cal. Ct. App. 1982) (citations omitted).  One such interest is uncovering the truth in legal proceedings by allowing broad discovery.  Id.  When the right of privacy and the public interest conflict, the court must balance the interests for a fair resolution of the lawsuit.  Id.  A constitutional interest in privacy should be recognized in this balancing process.  Seattle Times Co. v. Rhinehart, 467 U.S. 20, 34-36 (1984).

Although plaintiffs do have a privacy interest in their bank statements and in information contained in those statements that is unrelated to the instant action (i.e., deposits and withdrawals unrelated to plaintiffs' mortgage payments), it is also true that defendants maintain an interest in defending themselves in this lawsuit.  Such defense necessarily turns in part on the state of the evidence regarding plaintiffs' claims that they have always been able to pay their mortgage loan and that any purported default was due to defendants' negligence in failing to

1 withdraw available funds from plaintiffs' bank account(s).  Weighing these competing interests
2 leads the court to overrule plaintiffs' privacy objections.  A protective order will sufficiently
3 protect plaintiffs' privacy interests while permitting appropriate discovery.

      2.        <u>Relevance</u>

Regarding the scope of permissible discovery, Rule 26(b)(1) provides that unless otherwise limited by court order, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter."  Fed. R. Civ. P. 26(b)(1) (emphasis added).  Rule 26(b)(1) further provides that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  <u>Id.</u>  However, as the Advisory Committee Notes to the 2000 Amendment to Rule 26(b)(1) indicate, the "Committee intends that the parties and the court focus on the actual claims and defenses involved in the action."

The defendants' subpoenas are very clearly related to the claims in this case. Plaintiffs accuse defendants of negligence for unilaterally stopping the withdrawals of mortgage payments from plaintiffs' bank accounts pursuant to the automatic payment plan and despite the availability of funds.  Defendants assert that their records reflect their attempts to withdraw funds, but inability to actually do so due to insufficient funds in the accounts.  Defendants seek the bank records in support of their defense to the negligence claim.

Defendants also seek the bank statements in support of their affirmative defense of unclean hands.  In the FAC, plaintiffs' assert that they were "never in default" and that defendants should have never foreclosed on the Subject Property.  Again, defendants' records contradict plaintiffs' allegations.  These records show that plaintiffs were experiencing financial difficulty in early-2008 when they deferred their January 2008 and February 2008 payments. The plaintiffs were to resume making payments in March 2008, but failed to make that payment.

6

1  Wells Fargo claims it sent at least nine letters between March 2008 and November 2008
2  informing plaintiffs that they were in default.  Ultimately, Wells Fargo offered plaintiffs a loan
3  modification effective December 1, 2008.  Wells Fargo's records indicate that plaintiffs missed
4  at least nine payments before receiving the December 2008 loan modification.  Plaintiffs again
5  missed the June 1, 2009 mortgage payment.  In April 2010, plaintiffs again applied for a loan
6  modification, but Wells Fargo denied this application within days after it was submitted.  Shortly
7  thereafter, Wells Fargo recorded a notice of default.  This foreclosure sale was stayed when
8  plaintiffs filed their bankruptcy petition.  Once plaintiffs' bankruptcy petition was dismissed in
9  April 2011, Wells Fargo again initiated foreclosure proceedings by recording and posting a
10 second notice of trustee's sale on plaintiffs' front door on April 27, 2011.  Despite plaintiffs'
11 allegations, Wells Fargo claims that it gave plaintiffs notice of the sale and that it did not offer
12 plaintiffs a loan modification agreement in July 2011.
13         Accordingly, plaintiffs' motion to quash on grounds of relevance will be denied.
14 Defendants will, however, be limited to seeking documents from the time period of January 2008
15 through August 2011.
16 C.     Defendants' Request for Sanctions
17         Defendants request costs associated with opposing the instant motion.  Because it
18 appears the position of both parties was substantially justified, this request will be denied.
19         Based on the foregoing, IT IS HEREBY ORDERED that:
20         1. Plaintiffs' motion to quash is granted in part.  The subpoenas served on Bank
21 of America and Golden 1 Credit Union shall be limited to the time period of January 2008
22 through August 2011.  All bank statements shall be produced within fourteen days from the date
23 of this order and shall be produced solely for the purpose of preparing for trial in this action.
24 They shall not be filed in the public record of this action without written permission of plaintiffs
25 or a court order.  Exhibits consisting of protected documents sought to be used in pretrial
26 motions shall be submitted to the court under seal pursuant to the procedure outlined by Local

Rule 141.

2. Defendants' request for expenses is denied.

DATED: March 13, 2013.

                              ALLISON CLAIRE
                              UNITED STATES MAGISTRATE JUDGE

/mb;albi2991.disc