UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HECTOR ALBIZO, ET AL., | No. 2:11-cv-2991 AC |
| Plaintiffs, | |
| v. | ORDER |
| WACHOVIA MORTGAGE, ET AL., | |
| Defendants. | |

On July 31, 2013, the court held a hearing on defendant Wells Fargo Bank, N.A.'s motion for attorneys' fees. No appearances were made for plaintiffs. Melissa Coyle appeared for defendant. On review of the motion and the documents filed in support, THE COURT FINDS AS FOLLOWS:

RELEVANT FACTS AND PROCEDURAL BACKGROUND

A.   Allegations in the First Amended Complaint

In or around August 2006, plaintiffs Hector and Mary Albizo obtained a mortgage loan from World Savings Bank, FSB (now Wachovia Mortgage ("Wachovia"), a wholly-owned subsidiary of Wells Fargo Bank, N.A. ("Wells Fargo")) secured by real property located at 7033 Ludlow Drive, Roseville, CA 95747 ("the Subject Property"). A deed of trust ("DOT") was recorded in the Placer County Recorder's Office on August 7, 2006.

In or around July 2010, Wachovia contacted plaintiffs to inform them that they were

behind on their mortgage. Plaintiffs claim that they were not behind on their mortgage payments. Instead, they accuse Wachovia of failing to withdraw funds through the automatic payment plan that they established through World Savings Bank, FSB. Plaintiffs maintain that the servicing of their mortgage loan has been impacted by two separate mergers during the first three years of the life of the loan: in or around October 2007, World Savings Bank, FSB merged with Wachovia, who began servicing plaintiffs' mortgage loan, and in on or around January 2009, Wachovia merged with Wells Fargo & Co., parent to Wells Fargo. Plaintiffs claim that they continued to make payments on their mortgage loan, remitting them to Wachovia through the automatic payment plan, and that any default on the mortgage loan was due to Wachovia's negligence.

Wachovia instructed plaintiffs to make a nearly $15,000 payment to bring the account current. Plaintiffs claim that they were only behind on two months of payments (totaling approximately $5,000) due to Wachovia's negligence, and that the amount sought by Wachovia was too high. Nonetheless, plaintiffs made the payment as instructed and received a letter of confirmation dated August 27, 2010 that the account was current. After this incident, which plaintiffs claim was a scheme by Wachovia to make money off of late fees and other charges, plaintiffs refused to continue with the automatic payment plan and instead began sending monthly checks with their mortgage statement.

Plaintiffs claim that they made payments for September and October 2010 and were current on their payments at that time. But on October 29, 2010, plaintiffs came to learn that the Subject Property was scheduled for a foreclosure sale on November 2, 2010. Immediately, plaintiffs sent a letter to Wachovia to contest the sale. They also contacted an attorney, who suggested filing a Chapter 13 bankruptcy petition, which would stay the sale of the Subject Property.

On or about November 2, 2010, a bankruptcy petition was filed and the sale of the Subject Property was stayed. Plaintiffs made the December 2010 mortgage payment as required by the bankruptcy court. Through their bankruptcy attorney, plaintiffs negotiated with Wachovia for a loan modification. However, plaintiffs were unable to make their March 2011 payment to Wachovia directly because, although the bankruptcy case was still pending, the bankruptcy court

would no longer accept the mortgage payment.

In or around April 2011, Wachovia received notice of the bankruptcy case's dismissal and directed plaintiffs to send them a payment for the March 2011 payment. Plaintiffs sent a check to Wachovia, but the latter did not cash the check.

In May 2011, plaintiffs completed an application for a loan modification. In or around June 2011, plaintiffs were informed by Wachovia that their application was still being reviewed.

In or around July 2011, Wachovia informed plaintiffs that they qualified for a loan modification. On or around July 7, 2011, plaintiffs received a call from a Wachovia representative who discussed the terms of the loan modification.

On July 18, 2011, the Subject Property was sold at a non-judicial foreclosure sale. Plaintiffs were unaware of this sale.

In July 29, 2011, Wachovia confirmed plaintiffs' loan modification in writing.

On or around late-August 2011, plaintiffs received a letter from Wachovia stating that their loan had been reinstated with revised terms pursuant to the loan modification.

On September 21, 2011, plaintiffs received a final Notice to Vacate the Subject Property by September 27, 2011 from the Sheriff. Plaintiffs were locked out of their home by the Sheriff on September 27, 2011.

Plaintiffs allege that they never received a Notice of Default, Notice of Trustee Sale, Notice of Unlawful Detainer, or a 3/30/90-Day Notice to Vacate the Subject Property.

B.  Procedural Background

On October 7, 2011, plaintiffs, through counsel, filed suit in the Placer County Superior Court against defendants Wachovia Mortgage, a division of Wells Fargo Bank, N.A., the successor by merger to Wells Fargo Bank Southwest, N.A., f/k/a/ Wachovia Mortgage, FSB, f/k/a/ World Savings Bank, FSB ("Wells Fargo") and NDeX West[1]. This action was removed to this court on November 9, 2011 pursuant to 28 U.S.C. § 1332 because the citizenship of the parties is entirely diverse and the amount in controversy exceeds $75,000.

---

[1] This defendant was dismissed by stipulation on July 31, 2012. ECF Nos. 40-41.

1    Plaintiffs' complaint stated claims for negligence, fraud, set aside trustee's sale, void or

2 cancel trustee's sale upon deed, breach of contract, breach of implied covenant of good faith,

3 unjust enrichment, and violation of the Unfair Business Practices Act.  On November 16, 2011,

4 defendant filed a motion to dismiss the complaint, ECF No. 10, which was granted in part and

5 denied in part on April 20, 2012.  ECF No. 30.

6    Plaintiffs then filed a first amended complaint ("FAC") on May 18, 2012 setting forth

7 claims for negligence, set aside trustee's sale, breach of contract, and breach of the implied

8 covenant of good faith and fair dealing.

9    On March 6, 2013, plaintiffs' counsel filed a motion to withdraw due to "irreconcilable

10 differences."  Following grant of this motion on March 28, 2013, plaintiffs stopped participating

11 in this action and, accordingly, this case was dismissed for plaintiffs' failure to prosecute.  See

12 ECF No. 72.

13    On June 13, 2013, defendant filed the instant motion for attorney's fees.  Plaintiffs have

14 not filed an opposition to this motion.

15                                    DISCUSSION

16    Defendant seeks attorneys' fees here on the basis of a contract entered into between it and

17 the plaintiffs.  Generally, California law governs the award of attorney's fees in loan agreements.

18 Resolution Trust Corp. v. Midwest Fed. Sav. Bank of Minot, 36 F.3d 785, 800 (9th Cir. 1993).

19 Except as specifically provided for by statute, the measure and mode of compensating for

20 attorney's fees is left to the agreement, express or implied, of the parties.  Cal. Civ. Proc. Code §

21 1021.

22    Pursuant to an underlying contract where reasonable attorneys' fees are awarded to the

23 prevailing party, the fees shall be fixed by the court.  Cal. Civ. Code § 1717(a).  The court, on

24 notice and motion by a party, determines which party prevailed on the contract, regardless if the

25 suit proceeded to final judgment.  Id. § 1717(b)(1).  More specifically, the prevailing party on a

26 contract is the party who recovered a greater relief in the action on the contract.  The court may

27 also determine there is no prevailing party for purposes of this section.  Id. § 1717(b)(2).  In short,

28 for defendant to be awarded fees, (1) the contract must authorize such fees, (2) defendant must be

4

1  the prevailing party, and (3) the fees incurred must be reasonable.  See First Nat. Ins. Co. of
2  America v. MBA Const., No. 02:04-cv-836 GEB JFM, 2005 WL 3406336, at *2 (E.D. Cal. Dec.
3  12, 2005).

4      1.    <u>Contract Authorizes Attorneys' Fees</u>

5      Defendant claims that its right to recover attorney's fees is memorialized in a fee clause
6  included in the note and the deed of trust.  Def.'s Req. for Judicial Notice Ex. D, at 4, ECF No.
7  13.  Though the fee clause is not included in the contract itself, the California Supreme Court has
8  held that California Civil Code section 1717(a) expands the fee clause so that it applies to the
9  entire contract.  Sansitas v. Goodin, 17 Cal. 4th 599, 610 (1998).  Courts have since held that,
10 after the 1983 amendment to 1717(a), the section covers any action on a contract, no matter how
11 narrowly the fee provision is worded.  See e.g., Kangarlou v. Progressive Title Co., 128 Cal. App.
12 4th 1174, 1178 (2005) (where a fee clause gave an escrow company a right to recover if a party
13 fails to pay escrow costs, parties could not limit recovery of attorney fees to a particular claim).
14 In short, the fee clauses in the note and deed of trust authorize attorney's fees for any action on
15 the entire contract.  Further, a prevailing party is entitled to fees for any action on the contract
16 whether incurred offensively or defensively.  Turner v. Schultz, 175 Cal. App. 4th 974, 979
17 (2009).

18     "If a contractual attorney fee provision is phrased broadly enough, . . . it may support an
19 award of attorney fees to the prevailing party in an action alleging both contract and tort claims:
20 '[P]arties may validly agree that the prevailing party will be awarded attorney fees incurred in any
21 litigation between themselves, whether such litigation sounds in tort or in contract.'"  Lockton v.
22 O'Rourke, 184 Cal. App. 4th 1051, 1076 (2010) (quoting Xuereb v. Marcus & Millichap, Inc., 3
23 Cal. App. 4th 1338, 1341 (1992)).  A broadly worded fee clause, for example, entitled a bank "to
24 fees incurred in defending itself against 'interrelated' allegations of fraud."  Abdallah v. United
25 Savings Bank, 43 Cal. App. 4th 1101, 1111 (1996) (citing Wagner v. Benson, 101 Cal. App. 3d
26 27, 37 (1980)).

27     The fee provision from the note in this case is reproduced here:
28         If: (A) I do not keep my promises and agreements made in this

5

> Security Instrument, or (B) someone, including me, begins a legal proceeding that may significantly affect Lender's rights in the Property…. then Lender may do and pay for whatever it deems reasonable or appropriate to protect the Lender's rights in the Property. Lender's actions may include, without limitation, appearing in court, paying reasonable attorneys' fees…. Lender must give me notice before Lender may take any of these actions. Although Lender may take action under this Paragraph 7, Lender does not have to do so….

Def.'s Req. Judicial Notice, Ex. D ¶ 7, ECF No. 75.

Defendant asserts that its fees were incurred here in defending against plaintiffs' four claims. Plaintiffs' first claim for negligence alleged that defendant breached the Note and Deed of Trust by failing to deduct monthly payments from plaintiffs' account and by foreclosing on the Subject Property. FAC ¶¶ 57, 62, ECF No. 32. Plaintiffs' second claim for relief to set aside the trustee's sale alleged that defendant never had the legal authority to foreclose on the Subject Property and sought to set aside the trustee's deed upon sale. Id. ¶ 66, ECF No. 32. In their third claim, plaintiffs asserted breach of contract on the grounds that defendant breached the loan agreements by unilaterally deciding to stop electronic debiting of plaintiffs' account and breached an alleged loan modification. Id. ¶¶ 72, 78, ECF No. 32. Lastly, plaintiffs asserted a claim for breach of the implied covenant of good faith and fair dealing, alleging that defendant breached the loan agreements by failing to deduct automatic payments and foreclosing on the property. Id. ¶¶ 83, 84, ECF No. 32.

These claims directly relate to the enforcement of the Promissory Note through defendant's non-judicial foreclosure of the Subject Property, thereby invoking the fee provisions. See Nguyen v. Wells Fargo Bank, N.A 10-cv-4081 EDL, 2011 WL 9322, at *9 (N.D. Cal. Jan. 3, 2011) (court granted defendant's fee motion based on the same fee clauses at issue here after finding that the plaintiff's claims related to the non-judicial foreclosure of real property were related to Wells Fargo's enforcement of the Note). Since California Civil Code section 1717 is satisfied where all of plaintiffs' allegations challenge defendant's enforcement of the Note and Deed of Trust, the provision for attorneys' fees may be applied to this case.

////

2. <u>Prevailing Party</u>

Under California law, when a party to a contract dispute obtains a simple unqualified win in litigation, a court has no discretion to deny attorneys' fees pursuant to a valid contractual attorneys' fees clause under section 1717. <u>Safley v. Wells Fargo, NA</u>, 2:12-cv-0795 JAM CKD, 2012 WL 4364254, at *1 (E.D. Cal. Sept. 21, 2012) (citing <u>Jackson v. Homeowners Ass'n Monte Vista Estates-East</u>, 93 Cal. App. 4th 773 (2001)).  But, "[i]f neither party achieves a complete victory on all the contract claims, it is within the discretion of the trial court to determine which party prevailed on the contract or whether, on balance, neither party prevailed sufficiently to justify an award of attorney fees." <u>Id.</u> (quoting <u>Scott Co. of Cal. v. Blount, Inc.</u>, 20 Cal. 4th 1103 (1999)).

"In deciding whether there is a 'party prevailing on the contract,' the trial court is 'to compare the relief awarded on the contract claim or claims with the parties' demands on those same claims and their litigation objectives as disclosed by the pleadings, trial briefs, opening statements, and similar sources.'" <u>Pinnacle Fitness & Recreation Mgmt., LLC v. Jerry & Vickie Moyes Family Trust</u>, 3:08-cv-1368-GPC-BGS, 2013 WL 3779301, at *2 (S.D. Cal. July 17, 2013) (quoting <u>Hsu v. Abbara</u>, 9 Cal. 4th 863, 876 (1995)).  "An involuntary dismissal operates as an adjudication on the merits unless it is for lack of jurisdiction, improper venue, or failure to join a party under Rule 19." <u>Valtierra v. Wells Fargo Bank, N.A.</u>, 1:10-cv-0849 AWI, 2012 WL 985700, at *2 (E.D. Cal. Mar. 22, 2012) (citing <u>Murphy v. Wells Fargo Bank, N.A.</u>, No. 10-cv-5837 MMC, 2012 WL 729378 (N.D. Cal. Mar. 6, 2012)); <u>see also</u> Fed. R. Civ. P. 41(b).

California Code of Civil Procedure section 1032(b) provides: "Except as otherwise provided by statute, a prevailing party is entitled as a matter of right to recover in any action or proceeding." Costs include attorneys' fees. Cal. Civ. Proc. Code § 1033.5(a)(10).

In this case, although the underlying judgment is not a simple, unqualified finding that defendant Wells Fargo did not violate the law, judgment was entered pursuant to Federal Rule of Civil Procedure 41(b) due to the plaintiffs' failure to prosecute.  "Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule—except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19—operates as

1  an adjudication on the merits." Fed. R. Civ. P. 41(b).  Because the court's order of dismissal did
2  not "state[] otherwise," defendant is the prevailing party due to the dismissal of this action with
3  prejudice.  See Gilbert v. World Sav. Bank, FSB, 2011 WL 995966, at *2 (N.D. Cal. 2011);
4  Mazzamuto v. Wachovia, 2010 WL 4916430, at *2 (N.D. Cal. 2010).

### 3. Reasonableness of Defendant's Fees

6  Lastly, the court turns to the reasonableness of the fees sought.  Defendant here seeks
7  $78,808.50 for attorneys' fees through the dismissal plus $1,659.50 for this unopposed motion.
8  Flewelling Decl. ¶¶ 6-7; Coyle Decl. ¶¶ 11, 12, ECF No. 75.  The matter of reasonableness of
9  attorneys' fees is within the sound discretion of the trial judge.  Stokus v. Marsh, 217 Cal. App.
10  3d 647, 656 (1990).

#### a. Reasonableness of Hourly Rate

12  As to the reasonableness of counsel's hourly rate itself, courts look at "prevailing market
13  rates in the relevant community" in order to determine what rate is "reasonable."  Blum v.
14  Stenson, 465 U.S. 886, 895 (1984); Davis v. City of San Francisco, 976 F.2d 1536, 1545 (9th Cir.
15  1992) (a reasonable hourly rate should be determined "by reference to the fees that private
16  attorneys of an ability and reputation comparable to that of prevailing counsel charge their paying
17  clients for legal work of similar complexity"); see also PLCM Group v. Drexler, 22 Cal. 4th 1084
18  (2000) ("In the present matter, the superior court based the award of attorney fees to the
19  prevailing party, PLCM, on the number of hours expended by counsel multiplied by the
20  prevailing market rate for comparable legal services in San Francisco, where counsel is located.
21  No error appears. The superior court used a proper standard in calculating the fees.").

22  Here, Wells Fargo submits the declaration of Mark Flewelling that details the
23  qualifications and rates for each individual in his firm who worked on the case, as well as the
24  detailed billing records for the case showing the fees and costs incurred by Wells Fargo.  See
25  Flewelling Decl.  While multiple attorneys at Anglin, Flewelling, Rasmussen, Campbell &
26  Trytten ("AFRCT") participated in the defense of this case, see id. ¶ 6, defendant seeks
27  compensation only for lead counsel Mellisa Coyle. See id.  Ms. Coyle's hourly fee is $275, and it
28  is claimed that she spent 105.70 hours on this case.  Id., ECF No. 75-1 at 15.

8

Generally, a reasonable hourly rate should be determined "by reference to the fees that private attorneys of an ability and reputation comparable to that of prevailing counsel charge their paying clients for legal work of similar complexity." Davis v. City & Cnty. of San Francisco, 976 F.2d 1536, 1545 (9th Cir. 1992) (opinion vacated in part on other grounds). On review of similar cases, the court finds Ms. Coyle's rate to be entirely reasonable and commensurate with those charged in the local legal community. See, e.g., Neufeld v. Wells Fargo Home Mortg., Inc., 2011 U.S. Dist. LEXIS 63238 (C.D. Cal. June 13, 2011) (finding AFRCT's rates reasonable and approving rates of $350/hour for Mr. Flewelling and $320/hour for Douglas G. Matsui); Phillips v. IMS Loans, Inc., 2:09-cv-3112 FCD EFB, 2010 WL 3958653, at *2-3 (E.D. Cal. Oct. 8, 2010) (approving rate of $320/hour for Mr. Flewelling, $300/hour for Fred Hickman, and $270/hour for Jeremy Shulman); Lopez v. Wachovia Mortg., 2:09-cv-2340 JAM KJN, 2010 WL 3034167 (E.D. Cal. July 30, 2010) (approving defense counsel's rates of $320 and $280 per hour).

    b.  Reasonableness of Time Expended

Next, in calculating reasonable attorneys' fees, the court can consider the following factors if they are relevant to the case:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill necessary to perform the legal services properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relations with the client, and (12) awards in similar cases.

Lafarge Conseils Et Etudes, S.A. v. Kaiser Cement & Gypsum Corp., 791 F.2d 1334, 1341-42 (9th Cir. 1986).

    i.  Time and Labor Required

Defendant notes first that this was not a routine wrongful foreclosure case. Specifically, defendant asserts that plaintiffs' pleadings contained multiple statements that were false and attached several exhibits that were falsified. Def.'s Mot. Att'y Fees 9, ECF No. 75. As a result, the parties engaged in protracted discovery for over a year. Id. Defendant participated in

multiple rounds of discovery, conducted plaintiffs' depositions, sought records to contradict the statements in the FAC, served subpoenas, retained experts and rebuttal experts, conducted expert depositions, and performed considerable research to discredit plaintiffs' experts. Through discovery, defendant "was able to unravel the web of lies on which plaintiffs' lawsuit was based." Id. Defendant discovered, for example, that plaintiffs' complaint contained non-authentic Wells Fargo documents; plaintiffs missed several payments on their loan due to insufficient funds in their bank accounts, not due to error by defendant; plaintiffs' expert witness testified to allegations without support of evidence; and plaintiffs engaged in other unethical practices. Id. 8-9, ECF No. 75.

### ii. Novelty and Difficulty of the Questions Involved

Defendant further notes that while the issues raised in the litigation were not extremely complex or novel, the litigation "required a thorough analysis of the law governing the pre-foreclosure requirements. This required research, evaluation, and consideration of both state and federal law." Coyle Decl. ¶¶ 4, 5, ECF No. 75. Defendant also claims that it had to defend against allegations of fact in relation to which plaintiffs fabricated documents and lied about defendant entering into non-existent agreements. Def.'s Mot. Att'y Fees 17, ECF No. 75.

While the court has already credited defendant for the time expended in defending against claims involving fabrications and forged documents, the court is not persuaded by defendant's argument that it was required to conduct a thorough analysis of state and federal law. The issues raised in this case were not novel, there were no need to research federal law as there were no federal claims asserted in this diversity action, and finally defense counsel has defended this defendant against multiple lawsuits in which similar if not identical claims were raised against it. Counsel should therefore be well-versed in the relevant law.

### iii. Skill Necessary to Perform the Legal Services Properly

Counsel next declares that the lead attorney in this case, Melissa Coyle, has extensive experience in mortgage lending-related litigation. Flewelling Decl. ¶¶ 2, 3, ECF No. 75. As such, she has substantial skill and expertise with respect to laws governing mortgage origination and servicing, collection, and foreclosure. Id.

####    iv.   Experience, Reputation and Ability of Attorneys

Mr. Flewelling's declaration also lists the experience and ability of all attorneys assigned to this case. While the experience, reputation, and ability of the attorneys is not questioned, it seems that these attorneys had an overabundance of skill and experience necessary to perform the legal services properly.

####    v.   Amount Involved and the Results Obtained

Defendant asserts that its potential exposure in this case was significant. Def.'s Mot. Att'y Fees 17, ECF No. 75. Plaintiffs sought to set aside the trustee's sale, cancel the trustee's deed, sought damages in excess of $200,000, and sought reasonable attorney's fees for the alleged breaches of contract. Def.'s Mot. Att'y Fees 17-18, ECF No. 75. The results obtained were favorable to defendant.

####    vi.   Nature and Length of the Professional Relations with the Client

Defendant notes that AFRCT has represented Wachovia Corporation and several of its subsidiaries for more than twenty-five years. Flewelling Decl. ¶ 2. That professional relationship continued after defendant acquired Wachovia Corporation in 2009. Id.

####    vii.   Awards in Similar Cases

As defendant's motion for attorney's fees is unopposed, it is requesting $80,468.00 in fees. Defendant claims that this fee is directly related to its need to conduct extensive discovery in order to refute plaintiffs' allegations of fraud and deceit. In support, defendants cites to two cases issued from the Northern District of California in which fees of approximately $70,000 and $40,000 were awarded on motion. See Bonner v. Redwood Mortg. Corp., 2010 U.S. Dist. LEXIS 102776 (N.D. Cal. Sept. 27, 2010) (court awarded $70,000 in attorney's fees and costs to a lender defending a wrongful foreclosure case); Omega v. Wells Fargo & Co., 2012 WL 2906240 (N.D. Cal. June 15, 2012) (awarding attorney's fees of $39,050.00 in a similar case).

The court has examined these cases and the time record for Ms. Coyle in this case. On review, the court finds that some reduction is necessary for overlap of work between Ms. Coyle and the other individuals assigned to this case and for counsel's time entries that reflect billing for clerical/ministerial work. See Au v. Funding Group, Inc., 2013 WL 1187919, at *9-10 (D. Haw.

11

2013). "[C]lerical or ministerial costs are part of an attorney's overhead and are reflected in the charged hourly rate."[1] Id. (citing Jeremiah B. v. Dep't of Educ., 09-cv-0262 DAE LEK, 2010 WL 346454, at *5 (D. Haw. Jan. 29, 2010) (citing Sheffer v. Experian Info. Solutions, Inc., 290 F. Supp. 2d 538, 549 (E.D. Pa. 2003)). See also Cruz-Almaraz v. Bourke Constr., Inc., 2012 WL 787205, at *1 (D. Or. 2012).

Additionally, while the court recognizes that this was not a run-of-the-mill mortgage action and that defendant participated in extensive discovery for the purpose of discovering facts, the legal issues raised by plaintiff's complaint were not difficult or novel and did not require a great deal of skill or research to address. In fact, the claims in the original complaint—negligence, fraud, set aside trustee's sale, breach of contract, and the like—are standard state law claims that the court and the banks encounter regularly in foreclosure cases like this one. Defendant nonetheless asserts that its experienced attorney expended more than 50 hours researching, drafting, and arguing a motion to dismiss the original complaint. This was excessive. The undersigned therefore finds that the number of hours spent on this case are unreasonable, warranting a reduction in the fees sought.

Based on the foregoing, IT IS HEREBY ORDERED that:

1. Defendant's Request for Judicial Notice is granted;

2. Defendant's June 13, 2013 (ECF No. 75) motion for attorneys' fees is granted in part; and

////

---

[1] The following is a list of tasks that have been deemed by some courts to be clerical or ministerial and therefore deemed non-compensable:

> reviewing Court-generated notices; scheduling dates and deadlines; calendering dates and deadlines; notifying a client of dates and deadlines; preparing documents for filing with the Court; filing documents with the Court; informing a client that a document has been filed; personally delivering documents; bates stamping and other labeling of documents; maintaining and pulling files; copying, printing, and scanning documents; receiving, downloading, and emailing documents; and communicating with Court staff.

Au, 2013 WL 1187919, at *9.

12

3. Defendant Wells Fargo is awarded attorneys' fees as the prevailing party in the amount of $40,000.00.

DATED: September 25, 2013

*/s/ Allison Claire*
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

/mb;albi2991.atty_fees